Hankin Sandman & Palladino
30 S. New York Avenue
Atlantic City, NJ 08401
Phone: (609) 344-5161
Fax: (609) 344-7913
***Attorneys for Plaintiff, Asphalt Paving Systems, Inc.***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASPHALT PAVING SYSTEMS, INC.; and DOSCH-KING CO., INC.,<br><br>Plaintiff<br><br>v.<br><br>ASPHALT MAINTENANCE SOLUTIONS, LLC; NORTH WHITEHALL TOWNSHIP; PLUMSTEAD TOWNSHIP; SOLEBURY TOWNSHIP; UPPER MACUNGIE TOWNSHIP; BOROUGH OF MACUNGIE, LOWER MACUNGIE TOWNSHIP; and OLEY TOWNSHIP,<br>Defendants | Civil Action No.: |

COMPLAINT

Plaintiffs Asphalt Paving Systems, Inc. ("APS") and DOSCH-KING CO., INC. ("DKC"), by and through their undersigned attorneys, for its Verified Complaint, say as follows:

**THE PARTIES**

1. Plaintiff APS is a New Jersey corporation and citizen of the State of New Jersey, authorized to do business in the Commonwealth of Pennsylvania, having a principal place of business at 550 N. Egg Harbor Road, Hammonton, New Jersey.

2. Plaintiff, DKC is a New Jersey corporation and citizen of the State of New Jersey, authorized to do business in the Commonwealth of Pennsylvania, having a principal place of business at 16 Troy Hills Road, Whippany, New Jersey.

3. Defendant Asphalt Maintenance Solutions, LLC ("AMS") is a Pennsylvania limited liability company and citizen of the Commonwealth of Pennsylvania, having a principal place of business at 188 Jefferson Street, Emmaus, Lehigh County, Pennsylvania 18049.

4. Defendant North Whitehall Township ("Whitehall") is a political subdivision of the Commonwealth of Pennsylvania and citizen of Pennsylvania, having a principal place of business at 3256 Levans Road, Coplay, PA 18037.

5. Defendant Plumstead Township ("Plumstead") is a political subdivision of the Commonwealth of Pennsylvania and citizen of Pennsylvania, having a principal place of business at 5186 Stump Road, Plumsteadville, PA 18949.

6. Defendant Solebury Township ("Solebury") is a political subdivision of the Commonwealth of Pennsylvania and citizen of Pennsylvania, having a principal place of business at 3092 Sugan Road, Solebury Township, PA 18963.

7. Defendant Upper Macungie Township ("Upper Macungie") is a political subdivision of the Commonwealth of Pennsylvania and citizen of Pennsylvania, having a principal place of business at 8330 Schantz Road, Breinigsville, PA.

8. Defendant Borough of Macungie ("Macungie") is political subdivision of the Commonwealth of Pennsylvania and citizen of Pennsylvania, having a principal place of business at 21 Locust Street, Macungie, Lehigh County, PA 18062.

9. Defendant Lower Macungie Township ("Lower Macungie") is a political subdivision of the Commonwealth of Pennsylvania and citizen of Pennsylvania, having a principal place of business at 3400 Brookside Road, Macungie, PA 18062.

10. Defendant Oley Township ("Oley") is a political subdivision of the Commonwealth of Pennsylvania and citizen of Pennsylvania, having a principal place of business at 1 Rose Virginia Road, Oley, PA 19547.

**JURISDICTION AND VENUE**

11. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331 because it involves claims arising under the laws and Constitution of the Unites States of America and pursuant to 28 U.S.C. § 1332 because Plaintiffs and all defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

12. Additionally, jurisdiction over Plaintiffs' state law claims are appropriate pursuant to 28 U.SC. § 1367 because they are part of the same case and controversy that give rise to the claims over which the Court exercises original jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1332.

13. Venue is proper is this District pursuant to 28 U.S.C. §1391a and §1391b because Defendants reside in this District and because a substantial part of the events giving rise to the claims asserted herein occurred within this District.

## PRELIMINARY STATEMENT

14. This action seeks to halt the unlawful use and further proliferation of proprietary specifications in the roadway maintenance industry which are aimed at, and have succeeded in, making AMS the only viable bidder on a number of projects in Lehigh, Berks and Bucks Counties, Pennsylvania.

## FACTS COMMON TO ALL COUNTS

### Background

15. Plaintiffs are contractors engaged in the business of providing paving and roadway maintenance services to *inter alia* municipal government entities throughout the Commonwealth of Pennsylvania.

16. AMS is a direct competitor of Plaintiffs in the paving and roadway maintenance business and focuses its business primarily in Lehigh, Berks and Bucks County, Pennsylvania.

### The Market

17. Under Pennsylvania law, municipal entities are required to publically bid contracts for paving and roadway maintenance services in excess of $18,500.00 and award the contract to the lowest responsive and responsible bidder. See, e.g. 35 Pa. Stat. §46402.

18. As a result, potential contractors must compete with one another to provide the lowest possible price for paving and roadway maintenance work to municipal entities.

19. Numerous contractors throughout Pennsylvania and the eastern United States, inclusive of Plaintiffs and AMS, compete for municipal paving and roadway maintenance contracts in Pennsylvania, inclusive of Lehigh County, Berks County and Bucks County.

20. Pursuant to Pennsylvania bidding law, and with certain exceptions not applicable here, municipalities are prohibited from "sole sourcing" a particular brand name of product.

21. Pursuant to Pennsylvania bidding law, municipalities are prohibited from showing favoritism or bias to any particular bidder.

AMS's Wrongful Conduct

22. In or about 2011, AMS commenced a course of action aimed at giving it sole and exclusive control of public bidding for paving and road maintenance in Lehigh County, Berks County and Bucks County (the "Monopoly Area").

23. To achieve its goal of monopolization, AMS conspired with the Defendant municipalities to have the specifications for public work tailored to make AMS either the only qualified bidder or to give AMS such control over the other bidders pricing that it was effectively the only qualified bidder.

24. As more fully explained below, AMS and the Defendant municipalities conspired to and did issue specifications for road maintenance which included all or some of the following exclusionary terms:

a. Bidders were mandated to use a product known as "Grip Tight";

b. Bidders were required to have prior experience with Grip Tight;

c. Bidders were required to use "High Performance Chip Seal" ("HPCS"); and

d. Bidders were required to have a 22 ft. chip spreader.

The Exclusionary Nature of "Grip Tight"

25. Fog Seal is a light mist asphalt emulsion product sprayed over roads after they have had other maintenance work performed.

26. The Fog Seal provides a smooth black appearance to the road.

27. The use of Fog Seal is not acceptable on roads controlled by the Pennsylvania Department of Transportation ("PennDot") as it detracts from friction and, in turn, vehicle traction. Accordingly, Fog Seal is not a recognized product under PennDot specifications.

28. Hammaker East, Ltd ("Hammaker") is a Pennsylvania company that manufactures a Fog Seal product it calls "Grip Tight." Hammaker describes Grip Tight as "a highly polymerized asphalt emulsion specially designed for fog seal and flush coat applications."

29. APS, DKC and a number of other asphalt emulsion companies are capable of producing a Fog Seal product that meets all of the performance criteria of Grip Tight.

30. Hammaker has entered into an agreement with AMS whereby AMS is the sole distributer of Grip Tight in the Northeast United States. Accordingly, no one bidding in the Monopoly Area excepting AMS can buy Grip Tight from Hammaker.

31. Any specification mandating the use of Grip Tight forces potential bidders to attempt to buy the product from AMS, which will be bidding against them.

32. In hopes of circumventing the obvious conflict in having to buy product from a competitor or having to name a competitor as a subcontractor, APS has attempted to buy "Grip Tight" directly from Hammaker. [Exhibit "A"] Hammaker refused to respond to APS' request.

33. In response to requests for Grip Tight from DKC, AMS has provided pricing more than double its own bid price or refused to give a price unless it was given the subcontract to apply the Grip Tight. [Exhibit "B"]

34. AMS' insistence upon being named the application subcontractor to anyone purchasing "Grip Tight" is driven solely by AMS' desire to control roadway maintenance in the Monopoly Area.

35. APS, DKC and many other potential bidders have the skill and equipment to apply Fog Seals, inclusive of Grip Tight or any material meeting its performance specifications.

The Exclusionary Nature of "High Performance Chip Seal"

36. Chip Seal is a generic term for a type of road maintenance work known as Bituminous Seal Coat ("BSC").

37. BSC is defined by the Pennsylvania Department of Transportation in Bulletin 408 Section 470 as the "application of bituminous material immediately followed by the application of coarse aggregate."

38. PennDot Bulletin 408 includes a table setting forth the gradation of stone which meet its requirements for "coarse aggregate", all of which are typically available to the pool of potential bidders.

39. HPCS is distinguished from typical chip seal in that it uses a small gradation of stone, 1/4", which is not recognized by PennDot as coarse aggregate.

40. HPCS is applied in the same manner and with the same equipment as any other BSC.

41. There are "coarse aggregate" materials which meet PennDot specifications and which are readily available to the common pool of bidders, which provide substantially the same result upon application as HPSC.

42. The Silver Hill Quarry ("Silver Hill"), owned by the H&K Group, is the only stone source in the Monopoly Area which will produce the fine stone needed to meet the specifications for HPCS.

43. AMS has entered into an agreement to buy 6,000 tons of HPCS from Silver Hill in 2012.

44. David Potter of the H&K Group has advised DKC its 6,000 ton commitment to AMS constitutes its maximum production of HPCS from Silver Hill for the year and thus it can not supply the HPCS to anyone else. [Exhibit "C"]

45. Assuming a source for HPCS outside the Monopoly Area could be found, and to date one has not, the cost to truck HPCS-compliant stone into the Monopoly Area from external sources is prohibitive.

The Exclusionary Nature of Requiring a 22 Ft. Spreader

46. A spreader is a machine which applies BSC, inclusive of HPCS.

47. Spreaders typically range from 16' to 24' all of which are capable of spreading BCS at any size up to their full width.

48. The relevance of spreader width is the machine's ability to cover a road in a single or double pass.

49. By way of example, a 22' spreader could cover a 22' road in a single pass or a 44' road in a double pass.

50. All spreaders greater than 22' can accomplish everything a 22' spreader can.

51. Spreaders smaller than 22' can provide the same single or double pass product as a 22' unless the road is between their width and 22'.

52. On information and belief, none of the roads at issue, or such a small amount of the roads at issue as to be *de minimus*, would require extra passes because a spreader less than 22' is used.

53. AMS has a 22' spreader.

54. APS does not own a 22' spreader but for fear of losing the opportunity to bid further work, APS is in the process of purchasing a 22' spreader.

55. DKC does not own a 22' spreader but for fear of losing the opportunity to bid further work, DKC is in the process of converting an existing 18' spreader into a 22' by installing a new spreader box.

## THE UNLAWFUL BID SOLICITATIONS

### The Prospective Bids/Contracts

#### ***The North Whitehall Township Project***

56. In April 2012, Defendant North Whitehall Township issued an advertisement soliciting bids for the maintenance of "various roads within North Whitehall Township". [Exhibit "D"]

57. The bid opening date is May 17, 2012. [Exhibit "D"]

58. "ATTACHMENT 1" to the Whitehall Specifications provides in relevant part:

. . .

DESCRIPTION OF WORK:

. . . Certification from aggregate producer certifying material meets specifications Attachment 1B, page 2 of 6, Table A and Table B. Certification from emulsion producer certifying material will meet specifications. Certifications from the material producers MUST be submitted with the bids.

. . .

| SCHEDULE OF PRICES | | | | | |
|---|---|---|---|---|---|
| Item 1 No. | Approximate 2 Quantities | Unit 3 | *Description 4 | Unit 5 Price | Total 6 |
| 1 | 28,504 +/- | SQ. YDS. | ***1/4" Inch High Performance Chip Seal applied*** | | |
| | | | complete in-place as per Attachment 1-B. | | |
| | | | | | |
| 2 | 28,504 +/- | SQ. YDS. | ***Grip Tight Fog Seal*** applied complete in-place | | |
| | | | as per Attachment 1B | | |
| 3 | 2,500 +/- | SQ. YDS. | Patch Work with E3M Oil (4/10 of a gallon per | | |
| | | | Square Yard, with ***1/4-inch Stone.*** | | |
| | | | | | |
| 4 | 500 +/- | GALS. | Crack Seal as per Pub. 408, Section 469, | | |
| | | | Specification ASTM D6690- - Type II, Crack | | |
| | | | Seal for Item #1 | | |
| | | | ***NO Alternative products will be considered*** | | |
| | | | ***for this project.*** | | |
| | | | | | |
| | | | Item's #1 through #4 To Be Awarded as a TOTAL | | |
| | | | | | |

| | | |
|---|---|---|
| *Description: Must include ADT on wearing surfaces. USE OF CUTBACK ASPHALT IS PROHIBITED BETWEEN MAY 1st AND OCTOBER 31st, EXCEPT AS NOTED IN BULLETIN NO. 25 | | |
| | SUBTOTAL | |
| | SUBTOTAL FROM OTHER ATTACHMENTS | |
| | TOTAL AMOUNT OF BID | |

[Emphasis Supplied] [Exhibit "E"]

59. The "SPECIAL PROVISIONS TO CONTRACT" require that:

(I) Certifications from material producers must be submitted with bids;

(ii) No alternative materials will be considered for use on the project; and

(iii) Township has the option to extend the award contract for a period of three (3) years, renewable in one-year increments, upon mutual agreement between the Township and Contractor; [Exhibit "F"]

60. "ATTACHMENT 1B" to the Whitehall Specifications provides in relevant part:

"DESCRIPTION

The Contractor shall furnish all labor, equipment, material, supplies, signage, traffic control and other incidentals necessary to provide a Single Size Cubical Bituminous Seal Coat followed by a quick set ***Grip Tight*** fog seal.

It is the intent of this "INVITATION" to secure a qualified contractor to place a specialized ***High Performance Chip Seal*** followed by a quick set Fog Seal for surface treatment on various streets. The work to be performed under this contract consists of furnishing and delivering all materials to the job site and performing all work required to install the ***High Performance Chip Seal*** followed by a ***Grip Tight*** Fog Seal as per Penn DOT PUB 408/2011-2 and all supplements and attached specifications.

**The attached specifications shall prevail over Penn DOT PUB 408 and Supplements.** [Original Emphasis]

Bidders shall be Penn DOT prequalified prime contractors in accordance with all sections of PUB 408/2011-2 at the time of the bid opening. **Contractor shall have a minimum of three (3) years experience in applying this specialized type of chip seal and fog seal.** [Original Emphasis]

## BID SUBMITTALS

**The following items must be submitted with bid or bid will be rejected.** [Original Emphasis]

1. Provide a minimum of 3 municipalities with contact person, phone number and locations where you applied a ***High Performance Chip Seal*** and ***Grip Tight*** Fog Seal within the past three (3) years in Pennsylvania, projects must be equal to or greater than this project.

2. Submit certification from proposed aggregate and emulsion suppliers showing that materials proposed for use conform to specifications listed herein.

## MATERIALS

**Asphalt Emulsion** [Original Emphasis]: Polymer Modified Asphalt Emulsion type CRS-2PM, meeting the requirements of PennDOT PUB 408 and Bulletin 15. Application rate for asphalt emulsion CRS-2PM shall be .40 - .50 gallon per square yard for single size cubical ***1/4 inch*** aggregate and .45 - .55 gallon per square yard for single size cubical 3/8 inch aggregate.

**Cover Coat Material** [Original Emphasis]: The chip or cover coat aggregate shall be a hard, durable, clean rock and free from coatings or deleterious material. Only one type of aggregate shall be used. Aggregates shall be supplied from a currently accepted source listed in Bulletin #14. Aggregates shall have less than 1.2% passing the 200 sieve. Aggregate size shall be either ***1/4 inch*** or 3/8 inch and in conformance with the coarse aggregate properties listed in Table A and with the gradation listed in Table B. Application rate for ***1/4-inch*** aggregate shall be 22 - 24 lbs./SY and for 3/8-inch aggregate, the application rate shall be 24 - 26 lbs./SY.

. . .

**TABLE B**
**COARSE AGGREGATE GRADATION (percent passing by weight)**
[Original Emphasis]

| Sieve Size | ***1/4" Chip*** | 3/8" Chip |
|---|---|---|
| ½" | 100 | 100 |
| 3/8" | 100 | 70 - 100 |
| ***1/4***" | 85 - 100 | 0 - 15 |

| | | |
|---|---|---|
| No. 4 | 10 - 30 | 0 - 3 |
| No. 8 | 0 - 3 | |
| No. 200 | 0 - 1.2 | 0 - 1.2 |

. . .

**Grip Tight Fog Seal Sample Submittal:** [Original Emphasis]
If requested by owner, prior to award of bid, submit to the owner a sample of the ***Grip Tight*** Fog Seal as supplied by Hammaker East, Ltd. along with the test results certified by Hammaker East, Ltd. to be in compliance with the requirements listed on page 6.

. . .

Grip Tight Fog Seal Specifications

. . .

**GRIP TIGHT MATERIAL**
As supplied by Hammaker East, Ltd., Chambersburg, PA. **No alternative materials will be accepted.**

. . ." [Emphasis Supplied] [Exhibit "G"]

61. Whitehall either knew or should have known that its inclusion of Grip Tight and Grip Tight experience in the bid specifications pre-ordains that AMS will be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

62. Whitehall either knew or should have known that its inclusion of HPCS in the bid specifications pre-ordains that AMS will be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid

specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

63. AMS conspired with Whitehall to create the specification.

64. As a result, APS, DKC and other bidders are being deprived of the opportunity to competitively bid on the Whitehall project.

***The Plumstead Township Project***

65. On or about April 10, 2012, Defendant Plumstead Township issued an advertisement soliciting bids for the maintenance of "various roads within Plumstead Township". [Exhibit "H"]

66. The bid opening date is May 8, 2012. [Exhibit "H"]

67. "ATTACHMENT 1" to the Plumstead Specifications provides in relevant part:

. . .

DESCRIPTION OF WORK:

. . .

The following shall be official documents, certified by material producer. Certification from aggregate producer certifying material to meet specifications Attachment 1B and 2 of 6 Table A and Table B. Certification from emulsion producer certifying material to meet specifications Attachment 1B page 6 of 6. ***Certifications from the material producers MUST be submitted with the bids.***

ESCALATOR CLAUSE: (if adopted by Municipality.)
See Attachment 1C

| SCHEDULE OF PRICES | | | | | |
|---|---|---|---|---|---|
| Item 1 No. | Approximate 2 Quantities | Unit 3 | *Description 4 | Unit 5 Price | Total 6 |
| 1 | 47,000 | SY | ***High Performance Chip Seal*** | | |

| | | | | | |
|---|---|---|---|---|---|
| | (more or less) | | Single Size 1/4 inch Bituminous Seal Coat | | |
| | | | utilizing CRS-2PM as per Attachment 1B | | |
| 2 | 47,000 | SY | ***Grip Tight Fog Seal*** applied complete | | |
| | (more or less) | | in-place as per Attachment 1B | | |
| | | | ***NO Alternative products will be considered*** | | |
| | | | ***for this project.*** | | |
| 3 | 3,450 | SY | ***High Performance Chip Seal*** | | |
| | (more or less) | | Single Size 1/4 inch Bituminous Seal Coat | | |
| | | | utilizing CRS-2PM as per Attachment 1B | | |
| 4 | 3,450 | SY | ***Grip Tight Fog Seal*** applied complete | | |
| | (more or less) | | in-place as per Attachment 1B | | |
| | | | ***NO Alternative products will be considered*** | | |
| | | | ***for this project.*** | | |
| | | | | | |
| | | | | SUBTOTAL | |
| | | | SUBTOTAL FROM OTHER ATTACHMENTS | | |
| | | | TOTAL AMOUNT OF BID | | |

*Description:
Must include ADT on wearing surfaces. USE OF CUTBACK ASPHALT IS PROHIBITED BETWEEN MAY 1st AND OCTOBER 31st, EXCEPT AS NOTED IN BULLETIN NO. 25

[Emphasis Supplied] [Exhibit "I"]

68. The "SPECIAL PROVISIONS TO CONTRACT" require that:

(I) Certifications from material producers must be submitted with bids;

(ii) No alternative materials will be considered for use on the project; and

(iii) Township has the option to extend the award contract for a period of three (3) years, renewable in one-year increments, upon mutual agreement between the Township and Contractor; [Exhibit "J"]

69. "ATTACHMENT 1B" to the Plumstead Specifications provides in relevant part:

"DESCRIPTION

The Contractor shall furnish all labor, equipment, material, supplies, signage, traffic control and other incidentals necessary to provide a Single Cubical Bituminous Seal Coat followed by a quick set ***Grip Tight*** fog seal.

It is the intent of this "INVITATION" to secure a qualified contractor to place a specialized ***High Performance Chip Seal*** followed by a quick set Fog Seal for surface treatment on various streets. The work to be performed under this contract consists of furnishing and delivering all materials to the job site and performing all work required to install the ***High Performance Chip Seal*** followed by a ***Grip Tight*** Fog Seal as per Penn DOT PUB 408/2011-2 and all supplements and attached specifications.
**The attached specifications shall prevail over Penn DOT PUB 408 and Supplements.** [Original Emphasis]

Bidders shall be Penn DOT prequalified prime contractors in accordance with all sections of PUB 408/2011-2 at the time of the bid opening. **Contractor shall have a minimum of three (3) years experience in applying this specialized type of chip seal and fog seal.** [Original Emphasis]

BID SUBMITTALS

**The following items must be submitted with bid or bid will be rejected.** [Original Emphasis]

1. Provide a minimum of 3 municipalities with contact person, phone number and locations where you applied a ***High Performance Chip Seal*** and ***Grip Tight*** Fog Seal within the past three (3) years in Pennsylvania, projects must be equal to or greater than this project.

2. Submit certification from proposed aggregate and emulsion suppliers showing that materials proposed for use conform to specifications listed herein.

MATERIALS

**Asphalt Emulsion** [Original Emphasis]: Polymer Modified Asphalt Emulsion type CRS-2PM, meeting the requirements of Penn DOT PUB 408 and Bulletin 15. Application rate for asphalt emulsion CRS-2PM shall be .40 - .50 gallon per square yard for single size cubical ***1/4 inch*** aggregate and .45 - .55 gallon per square yard for single size cubical 3/8 inch aggregate.

**Cover Coat Material** [Original Emphasis]: The chip or cover coat aggregate shall be a hard, durable, clean rock and free from coatings or deleterious material. Only one type of aggregate shall be used. Aggregates shall be supplied from a currently accepted source listed in Bulletin #14. Aggregates shall have less than 1.2% passing the 200 sieve. Aggregate size shall be either ***1/4 inch*** or 3/8 inch and in conformance with the coarse aggregate properties listed in Table A and with the gradation listed in Table B.

. . .

**COARSE AGGREGATE GRADATION TABLE B (percent passing by weight)** [Original Emphasis]

| Sieve Size | ***1/4" Chip*** | 3/8" Chip |
|---|---|---|
| ½" | 100 | 100 |
| 3/8" | 100 | 70 - 100 |
| ***1/4***" | 85 - 100 | 0 - 15 |
| No. 4 | 10 - 30 | 0 - 3 |
| No. 8 | 0 - 3 | |
| No. 200 | 0 - 1.2 | 0 - 1.2 |

. . .

**Grip Tight Fog Seal Sample Submittal:** [Original Emphasis]
If requested by owner, prior to award of bid, submit to the owner a sample of the ***Grip Tight*** Fog Seal as supplied by Hammaker East, Ltd. along with the test results certified by Hammaker East, Ltd. to be in compliance with the requirements listed on page 6.

. . .

CONSTRUCTION REQUIREMENTS

"[E]quipment shall conform to the following minimum requirements:

"**Chip Spreader:** This unit shall be a mechanical chip spreader capable of placing chips at a width of 22 feet in a single pass. Chip Spreader shall be computer rate controlled and accurate to plus or minus 5% of specified application rate. Owner shall have the option of testing said chip spreader each morning before operations begin to ensure accuracy. FOR SAFETY

REASONS the successful contractor shall provide a minimum of two (2) employees on mechanized chip spreader." [Emphasis Supplied]

Grip Tight Fog Seal Specifications

. . .

**GRIP TIGHT MATERIAL**
As supplied by Hammaker East, Ltd., Chambersburg, PA. **No alternative materials will be accepted.**

. . ." [Exhibit "K"]

70. Plumstead either knew or should have known that its inclusion of Grip Tight and Grip Tight experience in the bid specifications pre-ordains that AMS will be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

71. Plumstead either knew or should have known that its inclusion of HPCS in the bid specifications pre-ordains that AMS will be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

72. Plumstead knew or should have known that by requiring a 22' spreader, it was artificially limiting the pool of potential bidders to the benefit of AMS.

73. AMS conspired with Plumstead to create the specification.

74. As a result, APS, DKC and other bidders are being deprived of the opportunity to competitively bid on the Plumstead project.

***The Upper Macungie Township Project***

75. On or about March 26, 2012, Upper Macungie Township issued specifications for "High Performance Chip Seal with Grip Tight Fog Seal". [Exhibit "L"]

76. The bid opening date was April 17, 2012. [Exhibit "L"]

77. "ATTACHMENT 1" of the Upper Macungie Specifications provided in relevant part:

. . .

DESCRIPTION OF WORK:

. . .

The following shall be official documents, certified by material producer. Certification from aggregate producer certifying material to meet specifications Attachment 1B and 2 of 6 Table A and Table B. Certification from emulsion producer certifying material to meet specifications Attachment 1C. ***Certifications from the material producers MUST be submitted with the bids.***

ESCALATOR CLAUSE: (if adopted by Municipality.)
NO ESCALATOR CLAUSE

| SCHEDULE OF PRICES | | | | | |
|---|---|---|---|---|---|
| Item 1 No. | Approximate 2 Quantities | Unit 3 | *Description 4 | Unit 5 Price | Total 6 |
| 1 | 30,000 | SY | ***High Performance Chip Seal*** | | |
| | (more or less) | | Single Size 1/4 inch Bituminous Seal Coat | | |
| | | | utilizing CRS-2PM as per Attachment 1B | | |
| | | | | | |
| | | | | | |
| 2 | 30,000 | SY | ***Grip Tight*** Fog Seal applied complete | | |
| | (more or less) | | in-place as per Attachment 1C | | |
| | | | ***NO Alternative products will be considered*** | | |
| | | | ***for this project.*** | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | BIDS TO BE AWARDED ON A TOTAL OF | | |
| | | | ITEMS 1 AND 2. BIDDERS MUST BID | | |
| | | | ON ALL ITEMS. | | |
| | | | | | |
| *Description: Must include ADT on wearing surfaces. USE OF CUTBACK ASPHALT IS PROHIBITED BETWEEN MAY 1st AND OCTOBER 31st, EXCEPT AS NOTED IN BULLETIN NO. 25 | | | | | |
| | | | | SUBTOTAL | |
| | | | SUBTOTAL FROM OTHER ATTACHMENTS | | |
| | | | TOTAL AMOUNT OF BID | | |

[Emphasis Supplied] [Exhibit "M"]

78. The "SPECIAL PROVISIONS" of the Upper Macungie Specifications require that:

a) Contractors must submit certifications from material producers with their bids;

b) No alternative materials will be considered for use on the project; and

c) The Township has the option to extend the award contract for a period of three years, renewable in one-year increments, upon mutual agreement between the Township and the Contractor. [Exhibit "N"]

79. "ATTACHMENT 1B" of the Upper Macungie Specifications provide in relevant part:

"DESCRIPTION

The Contractor shall furnish all labor, equipment, material, supplies, signage, traffic control and other incidentals necessary to provide a Single Size Cubical Bituminous Seal Coat followed by a quick set ***Grip Tight*** fog seal.

It is the intent of this "INVITATION" to secure a qualified contractor to place a specialized ***High Performance Chip Seal*** followed by a quick set Fog Seal for surface treatment on various streets. The work to be performed under

this contract consists of furnishing and delivering all materials to the job site and performing all work required to install the ***High Performance Chip Seal*** followed by a ***Grip Tight*** Fog Seal as per Penn DOT PUB 408/2007-7 and all supplements and attached specifications.
**The attached specifications shall prevail over Penn DOT PUB 408 and Supplements.** [Original Emphasis]

Bidders shall be Penn DOT prequalified prime contractors in accordance with all sections of PUB 408/2007-7 at the time of the bid opening. Any contractor who has been debarred from public work by any DOT will not be considered a responsible bidder and bid will be rejected. **Contractor shall have a minimum of three (3) years experience in applying this specialized type of chip seal and fog seal.** [Original Emphasis]

BID SUBMITTALS

**The following items must be submitted with bid or bid will be rejected.** [Original Emphasis]

1. Provide a minimum of 3 municipalities with contact person, phone number and locations where you applied a ***High Performance Chip Seal*** and ***Grip Tight*** Fog Seal within the past three (3) years in Pennsylvania, projects must be equal to or greater than this project.

2. Certification along with test results from aggregate and emulsion suppliers showing that materials proposed for use conform to specifications listed herein.

MATERIALS

**Asphalt Emulsion** [Original Emphasis]: Polymer Modified Asphalt Emulsion type CRS-2PM, meeting the requirements of Penn DOT PUB 408 and Bulletin 15. Application rate for asphalt emulsion CRS-2PM shall be .40 - .50 gallon per square yard for single size cubical ***1/4 inch aggregate*** and .45 - .55 gallon per square yard for single size cubical 3/8 inch aggregate.

**Cover Coat Material** [Original Emphasis]: The chip or cover coat aggregate shall be a hard, durable, clean rock and free from coatings or deleterious material. Only one type of aggregate shall be used. Aggregates shall be supplied from a currently accepted source listed in Bulletion #14. Aggregates shall have less than 1.2% passing the 200 sieve. Aggregate size shall be either ***1/4 inch*** or 3/8 inch and in conformance with the coarse aggregate properties listed in Table A and with the gradation listed in Table

B. Application rate for ***1/4 inch aggregate*** shall be 22 - 24 lbs/SY and for 3/8 inch aggregate the application rate shall be 24 - 26 lbs/SY.

. . .

**COARSE AGGREGATE GRADATION TABLE B (percent passing by weight)** [Original Emphasis]

| Sieve Size | ***1/4" Chip*** | 3/8" Chip |
|---|---|---|
| ½" | 100 | 100 |
| 3/8" | 100 | 70 - 100 |
| ***1/4"*** | 85 - 100 | 0 - 15 |
| No. 4 | 10 - 30 | 0 - 3 |
| No. 8 | 0 - 3 | |
| No. 200 | 0 - 1.2 | 0 - 1.2 |

. . .

**Grip Tight Fog Seal Sample Submittal:** [Original Emphasis]
If requested by owner, prior to award of bid, submit to the owner a sample of the ***Grip Tight*** Fog Seal as supplied by Hammaker East, Ltd. along with the test results certified by Hammaker East, Ltd. to be in compliance with the requirements listed on page 6.

. . . [Emphasis Supplied]

80. Page 5 of 6 of the Upper Macungie Township Specifications state:

"Township has the option to extend the awarded contract for a period of three years, renewable in one year increments, upon mutual agreement between Township and Contractor." [Exhibit "O"]

81. "ATTACHMENT 1C" of the Upper Macungie Specifications provide in relevant part:

**GRIP TITLE FOG SEAL SPECIFICATIONS**

. . .

**THE GRIP TIGHT MATERIAL**

As supplied by Hammaker East, Ltd., Chambersburg, PA. **No alternative materials will be accepted.** [Exhibit "P"]

. . .

82. Question 12 on the "Statement of Bidder's Qualifications" in the Upper Macungie Specifications states: List your experience in bituminous seal coat in Pennsylvania in 2011. List a minimum of 15 completed projects in 2011 with dates of completion, size of project, owner and contact person. [Exhibit "Q"]

83. Question 12 above is tailored to limit bidders to AMS as it is the only bidder typically competing in the Monopoly Area, which did at least 15 BSC projects in Pennsylvania in 2011.

84. APS and DKC are prequalified by PennDot to perform BSC work.

85. APS and DKC each completed in excess of one million square yards of BSC along the eastern seaboard in 2011.

86. In their history, APS and DKC have successfully completed millions of square yards of BSC work.

87. APS, DKC and any number of potential bidders are more than qualified to perform the BCS work in Upper Macungie despite the fact that they did not complete 15 BCS projects in Pennsylvania in 2011.

88. On or about April 3, 2012, DKC wrote to Upper Macungie protesting the proprietary specification.

89. Upper Macungie failed to amend the Specifications.

90. AMS submitted a bid on the project.

91. APS chose not to bid as it had neither a source of Grip Tight or HPCS.

92. DKC submitted a bid using AMS as its Grip Tight supplier and applier as it had no other means of meeting the Fog Seal Specification.

93. DKC submitted a bid without a source for HPCS.

94. DKC did not have fifteen completed BCS projects in Pennsylvania in 2011.

95. DKC submitted the lowest price on the project.

96. Upper Macungie has not made an award as of this date.

97. Upper Macungie either knew or should have known that its inclusion of Grip Tight and Grip Tight experience in the bid specifications pre-ordained that AMS would be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS and other bidders in favor of AMS.

98. Upper Macungie either knew or should have known that its inclusion of HPCS in the bid specifications pre-ordained that AMS would be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS and other bidders in favor of AMS.

99. Upper Macungie either knew or should have known that requiring bidders to have completed 15 BCS projects in Pennsylvania would artificially limit the pool of potential bidders to the benefit of AMS.

100. AMS conspired with Upper Macungie to create the specification.

101. As a result, APS and DKC were deprived of the opportunity to competitively bid on the Upper Macungie project.

## THE AWARDED BUT INCHOATE BIDS/CONTRACTS

### *The Solebury Township Project*

102. On or about March 19, 2012, Solebury Township issued an advertisement soliciting bids for the Bituminous Seal and Crack Sealing. [Exhibit "R"]

103. "ATTACHMENT #1" of the Solebury Specifications provides in relevant part:

. . .

DESCRIPTION OF WORK: Contractor will provide labor and material necessary for installation of rubberized crack sealer followed by application of single bituminous seal coat CRS-2PM emulsion with 1/4 inch aggregate with ***Grip Tight*** Quick Set Fog Seal.

. . .

ESCALATOR CLAUSE: Refer page 8 of 16

| SCHEDULE OF PRICES | | | | | |
|---|---|---|---|---|---|
| 1. Item No. | 2. Approx. Quantities | 3. Unit | 4. Description | 5. Unit Price | 6. Total |
| 1. | 1,500 | Gal. | Rubberized Joint/Crack Sealer | | |
| 2. | 21,510 | SY | Bituminous Seal CRS-2PM with ***1/4 inch Aggregate*** | | |
| 3. | 21,510 | SY | ***Grip Tight*** Quick Set Fog Seal | | |
| | | | | TOTAL BID | |
| | | Note: | In addition to Payment and Performance Bonds in the amount of 100% of the contract price, successful bidder shall provide a one (1) year Maintenance Bond for 100% of the amount of the contract. The Maintenance Bond is to be security and guarantee to insure the integrity and quality of work performed.<br><br>Installation must be performed with a hydrostatic machine capable of a 22 feet wide bituminous seal coat application in a single pass.<br><br>Width of bituminous seal coat application | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | shall conform to existing cartway width.<br><br>The Township, at its sole discretion, reserves the right to reduce the amount of work (number of square yards) to be completed under this contract by up to 10%. | | |

[Emphasis Supplied] [Exhibit "S"]

104. The Solebury Specifications require that aggregates

"shall be supplied from a currently accepted source listed in Bulletin #14. Aggregates shall have a maximum of 1.5% passing the 200 Sieve. ***Aggregates size shall be 1/4"*** in conformance with the following gradation table and coarse aggregate properties listed below.

. . . [Emphasis Supplied] [Exhibit "T"]

105. The Solebury Specifications state in relevant part:

**"PROCEDURES:**

Asphalt distributor shall be computer rate controlled with accuracy of plus or minus 5% for determined application rate. Asphalt distributor must be capable of applying the fog seal at a width of 22 feet in a single pass. . . ." [Exhibit "U"]

106. AMS submitted a bid for the project.

107. APS chose not to bid as it had neither a source of Grip Tight or HPCS.

108. In lieu of bypassing the bid DKC submitted a proposal 1) using a substituted material for Grip Tight; and 2) without a source of 1/4" aggregate.

109. AMS submitted the low bid and was awarded the project.

110. Solebury either knew or should have known that its inclusion of Grip Tight in the bid specifications pre-ordained that AMS would be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

111. Solebury either knew or should have known that its inclusion of HPCS in the bid specifications pre-ordained that AMS would be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

112. Solebury knew or should have known that by requiring a 22' spreader, it was artificially limiting the pool of potential bidders to the benefit of AMS.

113. AMS conspired with Solebury to create the specification.

114. As a result, APS and DKC were deprived of the opportunity to submit responsive bids on the Solebury project.

## THE ROLLOVER CONTRACTS

### ***The Lower Macungie Township Project***

115. On or about March 6, 2011, Defendant Lower Macungie Township solicited bids for the application of Bituminous Seal Coat and Grip Tight Seal on various roads. [Exhibit "V"]

116. The bid opening date was March 30, 2011. [Exhibit "V"]

117. "ATTACHMENT 1" to the Lower Macungie Specifications provides in relevant part:

ATTACHMENT 1

. . .

DESCRIPTION OF WORK:

. . .

Township has the option to extend any portion of the awarded Contract for a period of three (3) years, renewable in one (1) year increments, upon mutual agreement between the township and contractor.

. . .

| SCHEDULE OF PRICES | | | | | |
|---|---|---|---|---|---|
| Item 1 No. | Approximate 2 Quantities | Unit 3 | *Description 4 | Unit 5 Price | Total 6 |
| 1 | 6,000 | Gals | Polymer Modified Crack Seal applied complete | | |
| | (more or less) | | in place as per Attachment 1B | | |
| | annually | | | | |
| 2 | 500 | Gals | PolyPatch, Standard Mix applied complete | | |
| | (more or less) | | in place as per Attachment 1C | | |
| | annually | | | | |
| 3 | 33,000 | SY | ***Grip Tight*** Fog Seal applied complete | | |
| | (more or less) | | in place as per Attachment 1D | | |
| | annually | | | | |
| | | | Bids to be awarded based on a total of all | | |
| | | | Items to the lowest responsible bidder. | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | SUBTOTAL | |
| | | | SUBTOTAL FROM OTHER ATTACHMENTS | | |
| | | | TOTAL AMOUNT OF BID | | |

*Description:
Must include ADT on wearing surfaces. USE OF CUTBACK ASPHALT IS PROHIBITED BETWEEN MAY 1st AND OCTOBER 31st, EXCEPT AS NOTED IN BULLETIN NO. 25

[Emphasis Supplied] [Exhibit "W"]

118. The Lower Macungie Specifications provide in relevant part:

<u>"Contract Duration and Years</u>

If designated the successful bidder, the contractor will begin work upon notice to proceed. The contract shall expire in one year from the initial notice

to proceed, unless extended by agreement. An optional extension of the contract for a second and third year will be enacted upon mutual agreement between the Contractor and the Township to maintain contract unit pricing for the extensions. Such agreement shall be in writing and filed on or before January 15th of the contract extension." [Exhibit "X"]

119. "Attachment 1D" to the Lower Macungie Specifications provides in relevant part:

**GRIP TIGHT FOG SEAL SPECIFICATIONS** [Original Emphasis}

Fog seal shall consist of an application of ***Grip Tight*** as per specifications listed below applied immediately after the chip seal has been swept.

. . .

**GRIP TIGHT MATERIAL** [Original Emphasis]
Cationic latex modified asphalt emulsion used for fog seal on various types of roadways.

. . .

**PROCEDURES** [Original Emphasis]
Asphalt distributor shall be computer rate controlled with accuracy of plus or minus 5% for determined application rate. Asphalt distributor must be capable of applying the fog seal at a width of 22 feet in a single pass. The application temperature of liquid asphalt shall be 140-180 degrees F. The maximum application temperature for ***Grip Tight*** shall be 180 degrees F.

The existing surface shall be patched when necessary, cleaned, and rendered free from irregularities to the extent necessary to provide a reasonably smooth and uniform surface. Unstable corrugated or deteriorated areas of existing pavement shall be removed and replaced with suitable patching materials. The edges of existing pavements that will be adjacent to new pavement shall be thoroughly cleaned to permit adhesion of asphalt.

. . . [Emphasis supplied] [Exhibit "Y"]

120. AMS submitted a bid on the project.

121. DKC submitted a bid on the project assuming it could purchase Grip Tight and HPCS. It learned after submitting its bid that Hammaker would not sell to it.

122. APS was not performing Fog Seal or BCS in the Monopoly Area in 2011 and, accordingly, did not consider bidding.

123. AMS was awarded the project.

124. Lower Macungie either knew or should have known that its inclusion of Grip Tight in the bid specifications pre-ordained that AMS would be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

125. Lower Macungie either knew or should have known that its inclusion of HPCS in the bid specifications pre-ordained that AMS would be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

126. As a result, APS and DKC were deprived of the opportunity to competitively bid on the Lower Macungie project.

127. The AMS-Lower Macungie contract contains a "roll over" provision, whereby it may be renewed for up to three years in one year increments.

128. The contract is subject to its first one year renewal in or about April, 2012.

### *The Oley Township Project*

129. On or about May 23, 2011, Defendant Oley Township solicited bids for the application of Bituminous Seal Coat and "Grip Tight" Seal on various roads. [Exhibit "Z"]

130. On or about June 13, 2011, bids were opened and thereafter the project was awarded to AMS. [Exhibit "Z"]

131. Attachment 1 of the Oley Specifications provides in relevant part:

DESCRIPTION OF WORK: . . . Certification from aggregate producer certifying material to meet specifications Attachment 1B page 2 of 6 Table A and Table B. Certification from emulsion producer certifying material to meet specifications Attachment 1C. Certifications from the material producers MUST be submitted with the bids..

ESCALATOR CLAUSE: (if adopted by Municipality)
See attachment 1D

| SCHEDULE OF PRICES | | | | | |
|---|---|---|---|---|---|
| Item 1 No. | Approximate 2 Quantities | Unit 3 | *Description 4 | Unit 5 Price | Total 6 |
| 1 | 56,081 | SY | ***High Performance Chip Seal*** | | |
| | (more or less) | | Single Size ***1/4 inch*** Bituminous Seal Coat | | |
| | | | utilizing CRS-2PM as per Attachment 1B | | |
| | | | | | |
| | | | | | |
| 2 | 14,250 | SY | ***Grip Tight*** Fog Seal applied complete | | |
| | (more or less) | | in-place as per Attachment 1C | | |
| | | | ***NO Alternative products will be considered*** | | |
| | | | ***for this project.*** | | |
| | | | | | |
| | | | | | |
| | | | BIDS TO BE AWARDED ON A TOTAL OF | | |
| | | | ITEMS 1 AND 2. BIDDERS MUST BID | | |
| | | | ON ALL ITEMS. | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| *Description: Must include ADT on wearing surfaces. USE OF CUTBACK ASPHALT IS PROHIBITED BETWEEN MAY 1st AND OCTOBER 31st, EXCEPT AS NOTED IN BULLETIN NO. 25 | | | | | |
| | | | | SUBTOTAL | |
| | | | SUBTOTAL FROM OTHER ATTACHMENTS | | |
| | | | TOTAL AMOUNT OF BID | | |

[Emphasis Supplied] [Exhibit "AA"]

132. The "SPECIAL PROVISIONS" of the Oley Specifications require that:

(a) No alternative materials will be considered for use on the project; and

(b) Township has the option to extend the awarded contract for a period of three (3) years, renewable in one (1) year increments, upon mutual agreement of the Township and contractor. [Exhibit "BB"]

133. Attachment 1B to the Oley Specifications provides in relevant part:

"HIGH PERFORMANCE CHIP SEAL

. . .

It is the intent of this "INVITATION" to secure a contractor to place a specialized ***High Performance Chip Seal*** followed by a quick set Fog Seal for surface treatment on various streets. The work to be performed under this contract consists of furnishing and delivering all materials to the job site and performing all work required to install the ***High Performance Chip Seal*** followed by a ***Grip Tight*** Fog Seal as per Penn DOT PUB 408/2007-7 and all supplements and attached specifications. The attached specifications shall prevail over Penn DOT PUB 408 and Supplements.

CONSTRUCTION REQUIREMENTS

**Chip Spreader:** This unit shall be a mechanical chip spreader capable of placing chips at a width of 22 feet in a single pass. Chip Spreader shall be computer rate controlled and accurate to plus or minus 5% of specified application rate. Owner shall have the option of testing said chip spreader each morning before operations begin to ensure accuracy. FOR SAFETY REASONS the successful contractor shall provide a minimum of two (2) employees on mechanized chip spreader." [Exhibit "CC]

134. Attachment 1C to the Oley Specifications provides in relevant part:

"GRIP TIGHT FOG SEAL SPECIFICATIONS

Fog seal shall consist of an application of Grip Tight as per specifications listed below applied immediately after the chipseal has been swept. After application of Fog Seal there shall be no dust or loose aggregate. Roadway must remain open to traffic during this operation and any damage claims, up to one thousand dollars ($1,000) per vehicle, shall be the responsibility of the contractor.

GRIP TIGHT MATERIAL
As supplied by Hammaker East, Ltd., Chambersburg, PA. No alternative materials will be accepted." [Exhibit "DD"]

135. Attachment 1D to the Oley Township Specifications provides:

"ESCALATOR CLAUSE

Escalator Provisions:

a) The contractor shall have the right to increase or (decrease) the contract unit price of the items specified in an amount equal to the contractor's increase or (decrease) in costs of such items occurring subsequent to the date of the bid opening (hereinafter referred to as "base date"). Any increase (or decrease) in the contractor's cost of such items after the base rate shall be verified by proper documents furnished to the municipality, including proof of prices to the contractor from the contractor's source of supply.

b) Should the contractor's allocation of any items be materially reduced by the contractor's source of supply, the contractor may reduce proportionately the quantity of such items to be delivered in accordance with this contract.

c) The municipality may withdraw or reduce the quantity of any item or terminate or reduce the scope of the contract:

    1) If the unit cost of any item covered by these escalator provisions is increased by more than 25% above the base price, or

2) If, because of an increase in the unit cost of one or more items covered by these escalator provisions, the total estimate cost of the contract is increased more than 25% above the base price.

These escalator provisions shall apply only to the following materials:

* CRS-2PM asphalt emulsion

* Grip Tight Fog Seal asphalt emulsion" [Exhibit "EE"]

136. APS was not performing Fog Seal or BCS in the Monopoly Area in 2011 and, accordingly, did not consider bidding.

137. DKC did not submit a bid on the project as it could not submit a conforming bid.

138. Oley either knew or should have known that its inclusion of Grip Tight and Grip Tight experience in the bid specifications pre-ordained that AMS would be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

139. Oley either knew or should have known that its inclusion of HPCS and HPCS experience in the bid specifications pre-ordained that AMS would be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

140. Oley knew or should have known that by requiring a 22' spreader, it was artificially limiting the pool of potential bidders to the benefit of AMS.

141. AMS conspired with Oley to create the specification.

142. As a result, APS and DKC were deprived of the opportunity to competitively bid on the Oley project.

143. The AMS-Oley contract contains a "roll over" provision, whereby it may be renewed for up to three years in one year increments.

144. The contract is subject to its first one year renewal in or about June 2011.

### *The Borough of Macungie Project*

145. In or about May 25, 2011, the Borough of Macungie advertised for bids maintenance of various roadways within the municipality. [Exhibit "FF"]

146. On or about June 6, 2011, the Borough of Macungie awarded the project to AMS. [Exhibit "FF"]

147. "ATTACHMENT 1" of the Macungie Specifications provided in relevant part:

. . .

DESCRIPTION OF WORK:

. . .

The Borough has the option to extend the award contract for a period of three (3) years, renewable in one (1) year increments, upon mutual agreement between the Borough and the contractor.

ESCALATOR CLAUSE: (if adopted by Municipality.)

| SCHEDULE OF PRICES | | | | | |
|---|---|---|---|---|---|
| Item 1 No. | Approximate 2 Quantities | Unit 3 | *Description 4 | Unit 5 Price | Total 6 |
| | | | | | |
| 1 | 4,500 | SY | ***Single Size 1/4 inch*** Bituminous Seal Coat | | |
| | (more or less) | | utilizing CRS-2PM as per Attachment 1B | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| 2 | 1 | SY | Single Size 3/8 inch Bituminous Seal Coat | | |
| | | | utilizing CRS-2PM as per Attachment 1B | | |
| | | | | | |
| 3 | 4,500 | SY | ***Grip Tight*** Fog Seal applied complete | | |
| | (more or less) | | in place as per Attachment 1B | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | SUBTOTAL | |
| | | | SUBTOTAL FROM OTHER ATTACHMENTS | | |
| | | | TOTAL AMOUNT OF BID | | |

*Description:
Must include ADT on wearing surfaces. USE OF CUTBACK ASPHALT IS PROHIBITED BETWEEN MAY 1st AND OCTOBER 31st, EXCEPT AS NOTED IN BULLETIN NO. 25

[Emphasis Supplied] [Exhibit "GG"]

148. "ATTACHMENT 1C" of the Macungie Specifications provides:

**<u>Bid Opening Requirements</u>**

. . .

3. A reference list of recently completed projects in PennDOT District 5 utilizing the s***ingle size cubical aggregate*** and the ***grip tight*** fog seal, include the name of customer, contact person, phone number, project title, date completed, etc.

. . . [Emphasis Supplied] [Exhibit "HH"]

149. AMS submitted a bid on the project.

150. APS was not performing Fog Seal or BCS in the Monopoly Area in 2011 and, accordingly, did not consider bidding.

151. DKC did not bid as it could not submit a conforming bid.

152. AMS submitted the low bid and was awarded the project.

153. Macungie either knew or should have known that its inclusion of Grip Tight and Grip Tight experience in the bid specifications pre-ordained that AMS would be the

sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS, DKC and other bidders in favor of AMS.

154. Macungie either knew or should have known that its inclusion of HPCS in the bid specifications pre-ordained that AMS would be the sole responsive bidder and/or have a significant and material competitive advantage over other bidders and included it in the bid specifications with the purpose of discriminating against APS and other bidders in favor of AMS.

155. Macungie knew or should have known that by requiring a 22' spreader, it was artificially limiting the pool of potential bidders to the benefit of AMS.

156. AMS conspired with Macungie to create the specification.

157. As a result, APS, DKC and other bidders were deprived of the opportunity to bid on the Macungie project.

158. The AMS-Macungie contract contains a "roll over" provision, whereby it may be renewed for up to three years in one year increments.

159. The contract is subject to its first one year renewal on or about June 1, 2012.

## FURTHER EVIDENCE OF AMS WRONGFUL CONDUCT

### ***The Brecknock Township Project***

160. On or about March 15, 2012, Defendant Brecknock Township solicited bids for the application of Bituminous Seal Coat and Grip Tight Seal on various roads. [Exhibit II"]

161. The bid opening date as April 2, 2012. [Exhibit "II"]

162. "ATTACHMENT 1" of the Brecknock Township Specifications provides in relevant part:

. . .

| SCHEDULE OF PRICES | | | | | |
|---|---|---|---|---|---|
| Item 1 No. | Approximate 2 Quantities | Unit 3 | *Description 4 | Unit 5 Price | Total 6 |
| | | | | | |
| | | | OPTION A | | |
| | | | | | |
| 1 | 32,550 | SY | ***High Performance Chip Seal*** | | |
| | (more or less) | | Single Size 1/4 inch Bituminous Seal Coat | | |
| | | | utilizing CRS-2PM as per Attachment 1B | | |
| | | | | | |
| 2 | 32,550 | SY | ***Grip Tight*** Fog Seal applied complete | | |
| | (more or less) | | in place as per Attachment 1C | | |
| | | | ***NO Alternative products will be considered for this project*** | | |
| | | | | | |
| 3 | 55,050 | SY | Double Bituminous Seal Coat as per | | |
| | (more or less) | | Attachment 1D | | |
| | | | | | |
| *Description: Must include ADT on wearing surfaces. USE OF CUTBACK ASPHALT IS PROHIBITED BETWEEN MAY 1st AND OCTOBER 31st, EXCEPT AS NOTED IN BULLETIN NO. 25 | | | | | |
| | | | | SUBTOTAL | |
| | | | SUBTOTAL FROM OTHER ATTACHMENTS | | |
| | | | TOTAL AMOUNT OF BID | | |

[Emphasis Supplied] [Exhibit "JJ"]

163. "ATTACHMENT 1B" of the Brecknock Township Specifications provide in relevant part:

**HIGH PERFORMANCE CHIP SEAL**
**(Single Size Cubical Bituminous Seal Coat)**
**Followed by a Quick Set Grip Tight Fog Seal** [Original Emphasis]

. . .

> It is the intent of this "INVITATION" to secure a contractor to place a specialized ***High Performance Chip Seal*** followed by a quick set Fog Seal for surface treatment on various streets. The work to be performed under this contract consists of furnishing and delivering all materials to the job site and performing all work required to place the ***High Performance Chip Seal*** followed by a Grip Tight Fog Seal (as supplied by Hammaker East, Ltd.) as Per PennDOT PUB 408/2007-7 and all supplements and attached specifications. **The attached specifications shall prevail over PennDOT PUB 408 and Supplements.** [Original Emphasis]
>
> Bidders shall be PennDOT prequalified prime contractors in accordance with all sections of PUB 408/2007-7 at the time of the bid opening. Any contractor who has been debarred from public work by any DOT within the last 10 years will not be considered a responsible bidder and bid will be rejected. **Contractor shall have a minimum of three (3) years experience in applying this specialized type of material and shall submit a list of projects completed within the last three years which are equal to or greater than this project.** [Original Emphasis]
>
> . . . [Emphasis Supplied] [Exhibit "KK"]

164. "ATTACHMENT 1C" of the Brecknock Township Specifications provides in relevant part:

> **GRIP TIGHT FOG SEAL SPECIFICATIONS**
>
> . . .
>
> **GRIP TIGHT MATERIAL**
> As supplied by Hammaker East, Ltd., Chambersburg, PA. No alternative materials will be accepted. [Exhibit "LL"]

165. The "SPECIAL PROVISIONS" of the Brecknock Township Specifications provide in relevant part: "NO Alternative materials will be considered for use on this project." [Exhibit "MM"]

166. Attachment A of the Brecknock Township Specifications states in relevant part:

"...

> The following shall be official documents, certified by material producer. Certification from aggregate producer certifying material to meet specifications Attachment 1B page 2 of 6 Table A and B. Certification from emulsion producer certifying material to meet specification Attachment 1C. Certifications from the material producers must be submitted with the bids.
>
> ..." [Exhibit "NN"]

167. Question #12 of the "STATEMENT OF BIDDERS QUALIFICATIONS" in the Brecknock Township Specifications states:

> "List your experience in Bituminous Seal Coat in Pennsylvania in 2011. List a minimum of 15 completed contracts in 2011 with dates of completion, size of project, owner and contact person." [Exhibit "OO"]

168. On March 15, 2012, APS wrote a letter to Brecknock complaining of the exclusionary nature of the Specifications.

169. In response to APS' letter, Brecknock revised the specifications and allowed open competitive bidding.

170. On March 21, 2012, Peter King, the Vice President of DKC, was told by an employee of the Brecknock Township Roads Department that the Specification had literally been given to him by AMS.

<u>The Escalation Clauses</u>

171. Escalation clauses are common throughout the United States in contracts for roadway maintenance as oil is a primary ingredient in virtually all roadway surface treatments and its pricing is extremely volatile.

172. Every escalation clause Plaintiffs have reviewed in over 60 years combined experience in the roadway maintenance business is tied directly to the "Asphalt Price Index", an objective measure which effects all potential bidders equally.

173. The bids in Oley, Solebury, Lower Macungie and Plumstead have an escalation clause which allows the bidder to increase their price in lock step with any increase from their supplier.

174. Hammaker will always be the supplier of Grip Tight to AMS and any other bidder using Grip Tight must buy it from AMS. Accordingly, the Escalation Clauses provide Hammaker and AMS the extraordinary ability to "name their price" post bid.

## Anti-Trust Standing and Injury

175. APS and DKC are proper parties to seek redress under 15 U.S.C. § 1 et seq. because they are direct competitors of AMS in the relevant market, which has been restrained and monopolized by AMS.

176. APS and DKC's injuries are directly connected to AMS's anti-competitive scheme, as APS and DKC could have increased its size, profitability and market share but for AMS's restraint of trade and monopolization and/or attempted monopolization of the Pennsylvania municipal roadway maintenance market.

177. AMS's anti-competitive conduct has taken place in interstate commerce among several states.

## COUNT I
## Violation of the Sherman Act–Contract, Combination or Conspiracy in Restraint of Trade (15 U.S.C. §1)

178. The allegations of all preceding paragraphs are incorporated herein as if set forth at length.

179. AMS has illegally restrained trade in the Pennsylvania municipal roadway maintenance market by *inter alia* 1) engaging in exclusive dealing and other exclusionary distribution of Grip Tight and by 2) colluding with Whitehall, Plumstead, Solebury, Upper Macungie, Macungie, Lower Macungie and Oley, to ensure that Grip Tight, HPSC and the need for a 22' spreader is illegally specified in public bids for municipal roadway maintenance in the Monopoly Area.

180. Defendants' anti-competitive conduct has had significant adverse effect on competition in the Pennsylvania municipal roadway maintenance market, causing direct and proximate harm to APS and DKC, municipal consumers, and ultimately the taxpayers of the Commonwealth in that AMS has effectively eliminated all competition on bids where Grip Tight, HPSC and/or 22' spreader have been specified.

181. As a result, AMS has excluded APS and DKC from competing in the market, and as the sole possible bidder can and has submitted artificially high bids for public roadway maintenance projects that must be shouldered by the taxpayers.

182. As a direct and proximate result of the Defendants' restraint of trade AMS has injured APS and DKC in their business and property and such injuries and damages are ongoing.

**WHEREFORE**, Asphalt Paving Systems, Inc. and Dosch King Co., Inc. demands judgment against Asphalt Maintenance Solutions, LLC, North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township, jointly severally and in the alternative for:

A. Declaratory judgment that Defendants have violated the 15 U.S.C. §1.

B. Injunctive relief prohibiting Asphalt Maintenance Solutions, LLC and all persons, firms, and corporations under its control from engaging in further unlawful conduct in violation of the Sherman Act.

C. Injunctive relief voiding all roadway maintenance contracts awarded to Roadway Maintenance Solutions, LLC under exclusionary bid specifications and prohibiting future awards of such contracts.

D. Treble damages pursuant to 15 U.S.C. §15a

E. Attorney's fees, interest and costs of suit

F. Such other and further relief as the Court may deem just and proper.

**COUNT II**

Violation of the Sherman Act–Attempted Monopolization (15 U.S.C. § 2)

183. The allegations of all preceding paragraphs are incorporated herein as if set forth at length.

184. Through the acts described above, AMS has engaged in anti-competitive and exclusionary conduct in an attempt to the monopolize the municipal roadway maintenance market in the Monopoly Area.

185. AMS's specific intent of engaging in the aforesaid anti-competitive and exclusionary conduct is to monopolize the relevant market and there is a probability that it will succeed in its attempt to do so as a result of its market power, barriers to entry and other conduct described above.

186. AMS's anti-competitive conduct has had a significant adverse effect on competition in the Pennsylvania municipal roadway maintenance market, and will continue to do so, causing direct and proximate harm to APS and DKC, municipal consumers, and ultimately the taxpayers of the Commonwealth in that AMS has effectively eliminated all competition on bids where Grip Tight, HPSC and/or a 22' spreader have been specified.

187. As a direct and proximate result of the AMS's attempted monopoly AMS has injured APS and DKC in their business and property and such injuries and damages are ongoing.

**WHEREFORE**, Asphalt Paving Systems, Inc. and Dosch-King Co., Inc. demand judgment against Asphalt Maintenance Solutions, LLC, North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township, jointly severally and in the alternative for:

A. Declaratory judgment that Defendants have violated the 15 U.S.C. § 2.

B. Injunctive relief prohibiting Asphalt Maintenance Solutions, LLC and all persons, firms, and corporations under its control from engaging in further unlawful conduct in violation of the Sherman Act.

C. Injunctive relief voiding all roadway maintenance contracts awarded to Roadway Maintenance Solutions, LLC under exclusionary bid specifications and prohibiting future awards of such contracts.

D. Treble damages pursuant to 15 U.S.C. § 15a

E. Attorney's fees, interest and costs of suit

F. Such other and further relief as the Court may deem just and proper.

**COUNT III**
Violation of the Clayton Act (15 U.S.C. §14)

193. The allegations of all preceding paragraphs are incorporated herein as if set forth at length.

194. By way of the conduct described above, AMS has entered into an agreement regarding the purchase of Grip Tight and/or HPCS that substantially lessens competition and/or tends to create a monopoly in the municipal roadway maintenance market in the Monopoly Area.

195. As a result of its conduct, AMS has foreclosed competition in a substantial portion of the relevant market.

196. AMS's aforesaid anti-competitive conduct has had a significant adverse impact on competition, will continue to do so, causing direct and proximate harm to APS and DKC, municipal consumers, and ultimately the taxpayers of the Common in that AMS has effectively eliminated all competition on bids where Grip Tight and/or HPCS is specified.

197. As a direct and proximate result of AMS's anti-competitive conduct AMS has injured APS and DKC in their business and property and such injuries and damages are ongoing.

**WHEREFORE**, Asphalt Paving Systems, Inc. and Dosch King Co., Inc. demands judgment against Asphalt Maintenance Solutions, LLC, North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township, jointly severally and in the

alternative for:

A. Declaratory judgment that Defendants have violated the 15 U.S.C. §14.

B. Injunctive relief prohibiting Asphalt Maintenance Solutions, LLC and all persons, firms, and corporations under its control from engaging in further unlawful conduct in violation of the Sherman Act.

C. Injunctive relief voiding all roadway maintenance contracts awarded to Roadway Maintenance Solutions, LLC under exclusionary bid specifications and prohibiting future awards of such contracts.

D. Treble damages pursuant to 15 U.S.C. §15a

E. Attorney's fees, interest and costs of suit

F. Such other and further relief as the Court may deem just and proper.

**COUNT IV**
Conspiracy to Violate Civil Rights (42 U.S.C. § 1983)

198. The allegations of all preceding paragraphs are incorporated herein as if set forth at length.

199. Defendants North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township, acting under color of law, reached an understanding and agreement to act in concert with Defendant AMS to unconstitutionally discriminate against Plaintiffs by denying them an equal and fair opportunity to win the roadway maintenance project contracts and unfairly award the contracts to AMS without regard to merit or applicable public bidding laws.

200. By arrogating itself to the power of Whitehall, Plumstead, Solebury, Upper Macungie, Macungie, Lower Macungie and Oley and with Whitehall, Plumstead, Solebury, Upper Macungie, Macungie, Lower Macungie and Oley's knowledge, acquiescence, and approval, AMS was acting under color of law and as a state actor.

201. Whitehall, Plumstead, Solebury, Upper Macungie, Macungie, Lower Macungie, Oley, and AMS' conduct in rigging the results of the bid in favor of AMS and therefore discriminating against APS and DKC has no rational basis to a legitimate governmental interest.

202. By way of the aforesaid conduct, Defendants have violated APS' and DKC's rights equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

203. As a direct and proximate result of said violation, APS and DKC have been damaged.

**WHEREFORE**, Asphalt Paving Systems, Inc. and Dosch-King Co., Inc. demand judgment against Asphalt Maintenance Solutions, North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township, jointly severally and in the alternative for:

A. Injunctive relief prohibiting Defendants from further violating Asphalt Paving Systems, Inc.'s and Dosch-King Co., Inc.'s constitutional rights.

B. Compensatory Damages

C. Punitive Damages

D. Attorney's fees, interest and costs of suit.

E. Such other and further relief as the Court may deem just and proper.

**COUNT V**

Interference with a Prospective Contractual and Economic Opportunity

204. The allegations of all preceding paragraphs are incorporated herein as if set forth at length.

205. APS and DKC had a prospective contractual and economically advantageous opportunity in Whitehall, Plumstead, Solebury, Upper Macungie, Macungie, Lower Macungie and Oley with respect to their municipal roadway maintenance bid.

206. By way of the aforesaid conduct, AMS did intentionally and improperly interfere with APS and DKC's contractual and economic opportunity by inducing Whitehall, Plumstead, Solebury, Upper Macungie, Macungie, Lower Macungie and Oley to unlawfully prevent APS and DKC from acquiring the municipal roadway maintenance contract.

207. As a direct and proximate result, APS and DKC have been damaged.

**WHEREFORE**, Asphalt Paving Systems, Inc. and Dosch-King Co., Inc. demand judgment against Asphalt Maintenance Solutions, North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township, jointly severally and in the alternative for:

A. Compensatory Damages

B. Punitive Damages

C. Attorney's fees, interest and costs of suit.

D. Such other and further relief as the Court may deem just and proper.

**COUNT VI**

Civil Conspiracy

208. The allegations of all preceding paragraphs are incorporated herein as if set forth at length.

209. AMS, Whitehall, Plumstead, Solebury, Upper Macungie, Macungie, Lower Macungie and Oley did agree to commit an unlawful act, or commit a lawful act by otherwise unlawful means, to wit: by way of the foregoing conduct, discriminating against APS and DKC and favoring AMS in the award of the municipal roadway maintenance bid in North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township.

210. As a direct and proximate result of conspiracy, APS and DKC have been damaged.

**WHEREFORE**, Asphalt Paving Systems, Inc. and Dosch-King Co., Inc. demand judgment against Asphalt Maintenance Solutions, LLC, North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township jointly severally and in the alternative for:

A. Compensatory Damages

B. Punitive Damages

C. Attorney's fees, interest and costs of suit.

D. Such other and further relief as the Court may deem just and proper.

**COUNT VII**

Injunctive Relief Prohibiting Violation of Pennsylvania Bidding Laws

211. The allegations of all preceding paragraphs are incorporated herein as if set forth at length.

212. Pennsylvania's municipal bidding laws have the "purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts" and serve an intent to "close, as far as possible, every avenue of favoritism and fraud in its varied forms." See Conduit & Found. Corp. v. City of Philadelphia, 41 Pa. Cmwlth. 641, 646, 401 A.2d 376, 379 (1979)

213. The actions of AMS, Whitehall, Plumstead, Solebury, Upper Macungie, Macungie, Lower Macungie and Oley violate Pennsylvania municipal bidding laws by showing marked favoritism to AMS in public bids for roadway maintenance services in the Monopoly Area.

214. Pennsylvania law recognizes that violations of municipal bidding laws constitute irreparable harm and will enjoin the same. See Schaeffer v. City of Lancaster, 754 A.2d 719, 723 (Pa. Commw. Ct. 2000).

215. By way of the foregoing violations of Pennsylvania's municipal bidding laws, APS and DKS have suffered and will continue to irreparable harm.

WHEREFORE, Asphalt Paving Systems, Inc. and Dosch King Co., Inc. demands judgment against Asphalt Maintenance Solutions, LLC, North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township, jointly severally and in the alternative for:

A. Declaratory judgment that Defendants have violated Pennsylvania municipal bidding laws prohibiting favoritism.

B. Injunctive relief prohibiting Asphalt Maintenance Solutions, LLC and all persons, firms, and corporations under its control from engaging in further unlawful conduct in violation of Pennsylvania municipal bidding laws.

C. Injunctive relief voiding all roadway maintenance contracts awarded to Roadway Maintenance Solutions, LLC in violation of Pennsylvania municipal bidding laws North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township.

D. Injunctive relief prohibiting the award of future roadway maintenance contracts to Roadway Maintenance Solutions, LLC in violation of Pennsylvania municipal bidding laws in North Whitehall Township, Plumstead Township, Solebury Township, Upper Macungie Township, Borough of Macungie, Lower Macungie Township and Oley Township.

E. Attorney's fees, interest and costs of suit

F. Such other and further relief as the Court may deem just and proper.

HANKIN SANDMAN & PALLADINO

Dated: May 1, 2012

Raymond J. Went, Jr., Esq. (#91489)
John F. Palladino, Esq.
Colin G. Bell, Esq.
30 S. New York Avenue
Atlantic City, NJ 08401
Tel.: 609-344-5161
Fax: 609-344-7913
rayw@hankinsandman.com
john@hankinsandman.com
coling@hankinsandman.com

U:\My Files\Asphalt Paving\Asphalt Maint - Hammaker\Pleadings\Complaint Final.wpd