IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASPHALT PAVING SYSTEMS, INC. AND DOSCH-KING CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>ASPHALT MAINTENANCE SOLUTIONS, LLC; NORTH WHITEHALL TOWNSHIP; PLUMSTEAD TOWNSHIP; SOLEBURY TOWNSHIP; UPPER MACUNGIE TOWNSHIP; BOROUGH OF MACUNGIE, LOWER MACUGIE TOWNSHIP; AND OLEY TOWNSHIP,<br><br>Defendant. | : | No. 12-2370<br><br>JURY TRIAL DEMANDED |

**<u>DEFENDANT ASPHALT MAINTENANCE SOLUTIONS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

## I. <u>INTRODUCTION</u>

This dispute arises out of competition in the roadway maintenance industry for projects primarily located in Lehigh, Berks and Bucks County, Pennsylvania (the "subject area"). First Amended Compl. ("FAC") ¶ 14. In particular, Plaintiffs Asphalt Paving Systems, Inc. ("APS") and DOSCH-KING Co., Inc. ("DKC") (collectively referred to as "Plaintiffs") allege that Defendant Asphalt Maintenance Solutions, LLC ("AMS" or "Defendant") has denied municipalities and taxpayers in the subject area the right to select which entity performs roadway maintenance work. FAC ¶¶ 41, 53. This alleged denial is apparently the result of the Defendant municipalities, as identified in the First Amended Complaint, adopting, on their own behalf, roadway maintenance specifications that favor AMS. FAC ¶¶ 27, 28. Therefore, Plaintiffs bring

two counts for alleged violations of the Sherman Act, a count pursuant to the Clayton Act, a count pursuant to 42 U.S.C. § 1983, and state law claims for interference with a prospective contractual and economic opportunity, civil conspiracy, and injunctive and declaratory relief. However, as the following discussion makes clear, this entire matter should be dismissed for failure to state a claim.

## II. <u>FACTS</u>

Plaintiffs and Defendant are competitors in the roadway maintenance industry. All of the parties happen to compete in Pennsylvania. FAC ¶ 15. All of the Defendant municipalities have adopted certain specifications that each bidder for a roadway maintenance project is required to meet. FAC ¶¶ 27, 28. These specifications require the use of products known as "Grip Tight" and "High Performance Chip Seal" ("HPCS"). *Id*. at a-c. They also require the use of a twenty-two (22) foot chip spreader for road work and prior experience with using Grip Tight. *Id*. at c-d.

AMS is the alleged sole distributor of Grip Tight in the Northeast United States. *Id*. at 35. Plaintiffs complain, among other things, that they are unable to purchase Grip Tight from AMS, and, therefore, cannot bid on projects posted by the Defendant municipalities. *Id*. at 37, 38. Similarly, Plaintiffs allege that AMS has purchased all of the HPCS in the subject area, which makes it more expensive for Plaintiffs to obtain HPCS. *Id*. at 48-52. Finally, Plaintiffs allege that, despite the Defendant municipalities' mandate, a twenty-two (22) foot spreader is unnecessary to conduct road work. *Id*. at 60. It is alleged that AMS has a twenty-two (22) foot spreader, but Plaintiffs do not. *Id*. at 61-63. In sum, Plaintiffs complain that the Defendant

municipalities have adopted the aforementioned requirements because of AMS' petitioning and with the intent of preventing Plaintiffs from bidding on construction projects.

## III. ISSUES

### A. WHETHER THE EXCLUSIVE DEALING AND CONTROL OF GRIP TIGHT AND HPCS ALLEGED IN COUNTS I-III SHOULD BE DISMISSED WHERE PLAINTIFFS HAVE FAILED TO DEFINE A RELEVANT MARKET FOR THESE PRODUCTS AND ADMIT THAT INTERCHANGEABLE PRODUCTS EXIST, BUT COMPLAIN THAT ONLY CERTAIN PRODUCTS MAY BE USED FOR ROADWORK IN THE DEFENDANT MUNICIPALITIES BECAUSE OF THE MUNICIPALITIES' BIDDING REQUIREMENTS?

*Suggested Answer*: **Yes.**

### B. WHETHER THE ANTITRUST AND MONOPOLIZATION CLAIMS ALLEGED IN COUNTS I-III OF PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE DISMISSED PER THE NOERR-PENNINGTON DOCTRINE WHERE AMS PETITIONED MUNICIPALITIES TO ADOPT BID SPECIFICATIONS THAT ALLEGEDLY FAVORED AMS?

*Suggested Answer*: **Yes.**

### C. WHETHER PLAINTIFFS' CIVIL RIGHTS CLAIM PER 42 U.S.C. § 1983 AND STATE LAW CLAIMS SHOULD BE DISMISSED WHERE NOERR-PENNINGTON IMMUNITY HAS BEEN EXTENDED TO CLAIMS UNDER SECTION 1983 AND COMMON LAW TORT CLAIMS?

*Suggested Answer*: **Yes.**

### D. WHETHER PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT SHOULD BE DISMISSED WHERE PLAINTIFFS ARE NOT TAXPAYERS IN ANY OF THE CONTRACTING MUNICIPALITIES AND, THEREFORE, LACK STANDING?

*Suggested Answer*: **Yes.**

## IV. ARGUMENT

### A. Standard for Motion to Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate where, as here, the complaint fails to set forth sufficient facts to support the elements of a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Phillips v. Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Although Rule 8(a) of the Federal Rules of Civil Procedure has often been said to require "notice" rather than "fact" pleading, as the Supreme Court in *Twombly* made clear, sufficient factual pleading is an indispensable element of the Rule's requirement that a pleader provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 573; *see also Phillips*, 515 F.3d at 230-34. Where a complaint pleads facts 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citations omitted). In applying these principles, the court may consider, in addition to the allegations contained in the complaint itself, exhibits attached to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indust., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

### B. The court must dismiss the Sherman Act Counts (Count I and II) and the Clayton Act Count (Count III) with regard to the alleged restraint of trade and attempted monopolization of Grip Tight and HPCS where a relevant market has not been established and, if established, fails because the products within the market are interchangeable with products outside the proposed market.

Plaintiffs' FAC appears to allege an improper monopoly not only of the "Pennsylvania municipal roadway maintenance market," but also of Grip Tight and HPCS, which are products used in roadway maintenance. FAC ¶¶ 41, 53, 198, 201. Per the discussion in Section C below,

however, Counts I-III of the FAC regarding restraint of trade and alleged monopolization of the roadway maintenance market should be dismissed under the auspices of the Noerr-Pennington Doctrine. In addition, as discussed herein, the allegations with regard to the alleged improper control of Grip Tight and HPCS should be dismissed for the following reasons: 1) Plaintiffs have failed to define a relevant market for these products; and 2) Plaintiffs have admitted that these products are readily interchangeable with other products.

**1. 15 U.S.C. § 2 – Attempted Monopolization (Count II)**

Plaintiffs' claim for attempted monopolization of Grip Tight and HPCS fails because Plaintiffs have not even attempted to define a relevant market for these products. To prevail on an attempted monopolization claim under § 2 of the Sherman Act, "a plaintiff must prove that the defendant (1) engaged in predatory or anticompetitive conduct with (2) specific intent to monopolize and with (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 750 (3d Cir. 1996); *Advo, Inc. v. Philadelphia Newspapers, Inc.,* 51 F.3d 1191, 1197 (3d Cir. 1995). In order to determine whether there is a dangerous probability of monopolization, a court must inquire "into the relevant product and geographic market and the defendant's economic power in that market." *Spectrum Sports, Inc.,* 506 U.S. at 459; *Pastore v. Bell Telephone Co. of Pennsylvania,* 24 F.3d 508, 512 (3d Cir. 1994). Plaintiffs have the burden of defining the relevant market. *Pastore*, 24 F.3d at 512. Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasiticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's

favor, the relevant market is insufficient and a motion to dismiss should be granted. *See, e.g., Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437-43 (3d Cir. 1997); *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (affirming district court's dismissal of claim for failure to plead a relevant market; proposed relevant market consisting of only one specific television channel defined too narrowly); *Tower Air, Inc. v. Federal Exp. Corp.*, 956 F. Supp. 270 (E.D.N.Y. 1996) ("because a relevant market includes all products that are reasonably interchangeable, plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.").

Here, Plaintiffs have only proposed a roadway maintenance market. FAC ¶¶ 41, 53, 198, 201. Any control, however, of that market is due to government action, and, therefore, immune from liability. *See infra* Section C. For example, no where in the FAC do Plaintiffs propose a relevant market for roadway maintenance products, which may encompass Grip Tight and HPCS. Based on this glaring absence alone, this Court should dismiss the 15 U.S.C. § 2 claim. *See, e.g., Willow Creek Fuels, Inc. v. Farm & Home Oil Co.*, 2009 U.S. Dist. LEXIS 85400, at *15-17 (E.D. Pa. Sept. 18, 2009) (dismissing Sherman Act and Clayton Act claims where plaintiff failed to define the relevant market with regard to product type or geography, failed to allege the percentage of the relevant market controlled by defendants, and failed to plead any facts regarding the presence or strength of the competitors in the market or the elasticity of consumer demand). However, if this Honorable Court decides otherwise, the below analysis applies.

Even if it is assumed for purposes of this Motion that Plaintiffs are proposing in the FAC that the relevant market controlled is the market for Grip Tight and HPCS, then this Court must dismiss the Sherman Act claims because such a market is inappropriately narrow. FAC ¶¶ 41, 53. For example, in *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437-43 (3d Cir. 1997), the Third Circuit Court of Appeals found that allegations of exclusive dealing arrangements and monopolization of pizza supplies and ingredients for use in Domino's stores to fail where Plaintiffs defined the relevant market as "ingredients, supplies, materials and distribution services used by and in the operation of Domino's pizza stores." *Id*. at 437. In *Queen City*, Plaintiffs argued that the aforementioned market was appropriate for antitrust purposes, as they complained that Domino's forced franchisees to only use Domino's pizza supplies and ingredients. The Domino's standard franchise agreement required that only Domino's approved ingredients and supplies be used by franchisees. *Id*. at 438. As such, franchisees could not use lower cost alternatives, giving Domino's an alleged monopoly in pizza supplies and ingredients. *Id*. at 434.

The court explained, however, that "the outer boundaries of a relevant market are determined by reasonable interchangeability of use." *Id*. at 437 (internal citations omitted). When assessing reasonable interchangeability, "factors to be considered include price, use, and qualities." *Tunis Brothers Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir. 1991). Reasonable interchangeability is also indicated by "crosselasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. U.S.,* 370 U.S. 294, 325 (1962).

Based on the aforementioned standard, the court found that "the dough, tomato sauce, and paper cups that meet Domino's Pizza, Inc. standards and are used by Domino's stores are

interchangeable with dough, sauce and cups available from other suppliers and used by other pizza companies. Indeed, it is the availability of interchangeable ingredients of comparable quality from other suppliers, at lower cost, that motivates this lawsuit." *Id*. at 438. Accordingly, the court rejected Plaintiffs' proposed relevant market, which was narrowly defined, and adopted a broader relevant market that included pizza ingredients and supplies in general. *Id*. The only difference between Domino's-approved ingredients and supplies and other ingredients and supplies was the fact that the Domino's franchise agreement required the use of Domino's products. *Id*. The court held, however, that the test for a relevant market is not commodities reasonably interchangeable by a particular plaintiff, but 'commodities reasonably interchangeable by consumers for the same purpose.' *Id*. (internal citation omitted). "Domino's dough is reasonably interchangeable with other brands of pizza dough, and does not therefore constitute a relevant market of its own. All that distinguishes this dough from other brands is that a Domino's franchisee must use it or face a suit for breach of contract." *Id*. at 443.

Similarly, here, Plaintiffs appear to argue that Grip Tight and HPCS are their own relevant markets because these products are required by the Defendant municipalities' bidding requirements. Grip Tight, however, cannot constitute a relevant market of its own as Plaintiffs readily admit that there are other asphalt emulsion companies "capable of producing a Fog Seal product that meets all of the performance criteria of Grip Tight." FAC ¶ 34. Plaintiffs also allege that "[t]here are 'coarse aggregate' materials which meet PennDot specifications and which are readily available to the common pool of bidders, which provide substantially the same result upon application as HPCS." FAC ¶ 47. These alternatives therefore expand the relevant market and demonstrate that the only difference between Grip Tight and HPCS and other road

way products is that the Defendant municipalities require that the former be used on their roadways. In fact, as in *Queen's City*, it is this substitutability of products that prompts this lawsuit. Grip Tight and HPCS, like the Domino's ingredients and supplies, therefore, cannot constitute a relevant market and, as such, Plaintiffs' claims under 15 U.S.C. § 2 must be dismissed.

### 2. **<u>15 U.S.C. § 1 –Restraint of Trade (Count I)</u>**

Plaintiffs also allege that exclusive dealing and distribution arrangements regarding Grip Tight and HPCS entered into by AMS have unreasonably restrained trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. FAC ¶ 201. Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. To establish a Section 1 violation for unreasonable restraint of trade, a plaintiff must prove (1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted action was illegal; and (4) that the plaintiff was injured as a proximate result of the concerted action. *Mathews v. Lancaster General Hospital*, 87 F.3d 624, 639 (3d Cir. 1996); *Orson Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1229 (3d Cir. 1993).

A relevant market must be defined in order to substantiate a Section 1 claim. Plaintiffs fail to define a relevant market. Moreover, assuming that Plaintiffs are proposing that Grip Tight and HPCS are relevant markets, such a proposition fails. The relevant market analysis therefore is the same under Sections 1 and 2 of the Sherman Act. *Queen City Pizza, Inc. v. Domino's*

*Pizza, Inc.*, 124 F.3d 430, 442 (3d Cir. 1997). Accordingly, Count I fails to state a claim under 15 U.S.C. § 1 and must be dismissed.

**3. 15 U.S.C. § 14 (Count III)**

Similar to the Sherman Act claims, Plaintiffs also lodge a claim under the Clayton Act, 15 U.S.C. § 14. Section 3 of the Clayton Act prohibits exclusive dealing agreements that require a purchaser not to deal in the goods of a competitor of the seller. *Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 474 n.2 (3d Cir. 1992). Even if a court finds an exclusive-dealing arrangement, Section 3 is not violated unless a court finds the arrangement forecloses a substantial share of the **relevant market**. *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 110 (3d Cir. 1992). In addition, exclusive dealing does not violate Section 3 if there are legitimate business justifications for the arrangement. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 326 (1961); *Barr Labs.*, 978 F.2d at 111. Again, here, Plaintiffs have failed to define a relevant market for Grip Tight and HPCS. Therefore, the Clayton Act claim must be dismissed.

**C. The Court must dismiss the Sherman Act Counts (Count I and II) and the Clayton Act Count (Count III) because the Noerr-Pennington Doctrine immunizes AMS from antitrust and monopolization liability.**

Plaintiffs' contentions fall squarely within the ambit of the Noerr-Pennington Doctrine (the "Doctrine"), and, therefore, AMS' alleged petitioning of the Defendant municipalities to adopt specifications for roadway maintenance work and the alleged monopolization and/or restraint of trade resulting there from are immunized. Concerted efforts to restrain or monopolize trade by petitioning government officials are protected from antitrust liability under the Noerr-Pennington Doctrine. *Mine Workers* v. *Pennington*, 381 U.S. 657, 669-

672 (1965); *Cal. Motor Trans. Co.* v. *Trucking Unlimited*, 404 U.S. 508, 510 (1972). The scope of this protection depends, however, on the source, context, and nature of the anticompetitive restraint at issue. "Where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action," those urging the governmental action enjoy absolute immunity from antitrust liability for the anticompetitive restraint. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127,136 (1961) (finding trucking industry plaintiffs' relationships with their customers and the public were hurt by the railroads' petitioning activities, yet the railroads were immune from liability) (emphasis added). This includes two distinct types of actions.

A petitioner may be immune from the antitrust injuries which result from the petitioning itself. *Noerr,* 365 U.S. at 143 (1961). Also, and particularly relevant here, parties are immune from liability arising from the antitrust injuries caused by government action which results from the petitioning. *See Pennington*, 381 U.S at 671 (1965) (holding plaintiffs could not recover damages resulting from the state's actions); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Assoc*., 107 F.3d 1026, 1037 (3d Cir. 1997) (holding Noerr gave immunity for any damages stemming from state adoption of requirements for bar admission to petitioners who lobbied for their adoption). Therefore, if its conduct constitutes valid petitioning, the petitioner is immune from antitrust liability or monopolization whether or not the injuries are caused by the act of petitioning or are caused by government action which results from the petitioning.

In *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991), the Supreme Court reiterated the Noerr-Pennington Doctrine, under "which the federal antitrust laws…do not regulate the conduct of private individuals in seeking anticompetitive action from

the government." *Id*. at 379. The Supreme Court has also made it clear that there is no "conspiracy" exception to Noerr-Pennington immunity. *Id*. at 382. Simply because state officials might conspire with a private party to stifle competition does not mean that the action loses immunity. *See id*. The Doctrine provides that the Sherman **and** Clayton Acts "do not reach political activities no matter how nefarious those activities may be." *Astoria Entertainment, Inc. v. Edwards,* 159 F.Supp.2d 303, 320 (E.D. La. 2001); *See also Fisher Tooling Co., Inc. v. Gillet Outilliage*, 2006 WL 5895307, at *9-11 (C.D. Cal. June 6, 2006)

Based on the aforesaid law, courts have repeatedly immunized private parties from antitrust liability and allegations of monopolization based upon facts similar to those plead by Plaintiffs. For example, in *Association of Minority Contractors and Suppliers, "AMCAS, INC." v. Halliday Properties, Inc., et al.*, 1998 U.S. Dist. LEXIS 12596, at *18 (E.D. Pa. Aug. 13, 1998), this court found allegations of a conspiracy between an entity and public officials to prevent plaintiff from obtaining bonding insurance necessary for a project to be immunized under the auspices of the Noerr-Pennington Doctrine. In *AMCAS*, plaintiff alleged that its competitors' actions of petitioning city council to dissolve an entity that would have provided AMCAS with a bond necessary for a project violated the Sherman Antitrust Act. *Id*. at *5-7. AMCAS' theory was that by stifling competition, defendant competitor was able to successfully submit an inflated bid, thereby securing 'supracompetitive profits.' *Id*. at *11. AMCAS alleged that its competitor and various public officials made phone calls, held private meetings and otherwise exercised influence over city and county political figures in order to prevent AMCAS from receiving its bond. *Id*. at *10-11. The court found, however, that where a party seeks beneficial government treatment and is successful in obtaining such treatment, the petitioning for

such treatment is protected activity under the Noerr-Pennington Doctrine. *Id*. at *15. Additionally, the court opined that "even if AMCAS conspired with public officials to pass the resolution for selfishly motivated reasons, such a theory would be unsuccessful under *Omni Outdoor Advertising*." *Id*. at *14 (citing *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 383 (1991)). The court advised that AMCAS' remedies are political in nature, not legal. *Id*. at *15; *See also A.B. Bedell Wholesale Co. Inc. v. Philip Morris, Inc.*, 263 F.3d 239, 254 (3d Cir. 2001) (finding a settlement agreement between private parties and the government was immune as petitioning activity under the Noerr-Pennington Doctrine); *TAL v. Hogan*, 453 F.3d 1244, 1260 (10th Cir. 2006) (applying Noerr-Pennington immunity to alleged bid-rigging conspiracy regarding lobbying of city council to approve a renovation plan*)*; *Borough of Lansdale, et al. v. PP&L, Inc.*, *et al.*, 426 F. Supp. 2d 264, 279 (E.D. Pa. 2006) (applying Noerr-Pennington immunity to actions by the Pennsylvania Public Utility Commission stemming from a PP&L petition); *Jetaway Aviation, LLC v. The Board of County Commissioners of the County of Montrose, Colorado, et al.*, 2012 U.S. Dist. LEXIS 42377, at *14-15 (D. Colo. March 28, 2012) (finding that allegations of monopoly creation were immunized by the Noerr-Pennington Doctrine where the conduct complained of against the non-government defendants required decision making by county officials).

In the present matter, Plaintiffs' remedies are also limited to the political process rather than the present federal antitrust litigation. Plaintiffs have simply alleged that AMS was effective at lobbying the Defendant municipalities to adopt specifications that were favorable to AMS. FAC ¶ 27a.-d. The alleged monopoly of the "maintenance roadway market" was created through municipal choice and action. Indeed, Defendant municipalities are free to adopt any

specifications that they deem appropriate for their respective roadways, including the type of seals and machinery used by their contractors. This alleged "anticompetitive conduct" resulted because the Defendant municipalities have elected to work with AMS rather than Plaintiffs. FAC ¶¶ 199, 201. As repeatedly explained in the aforementioned cases, such allegations do not amount to antitrust violations or inappropriate monopolization because the alleged restraint of trade was created by government action. In fact, the Plaintiffs do not allege that they are outright banned from the bid process; rather, they complain that the bid process is more difficult given the adopted specifications. FAC ¶¶ 33-38, 50-52, 62. Because the adopted specifications were enacted via the political process, Noerr-Pennington immunity applies to the Sherman and Clayton Act claims lodged against AMS.

Lastly, Plaintiffs attempt to shoehorn into the FAC an allegation regarding the making of false representations to the Defendant municipalities. FAC ¶¶ 32, 201. This allegation has no bearing on the Sherman and Clayton Act claims. Nor does it remove these allegations from the protection afforded by the Noerr-Pennington Doctrine. *See Caldon, Inc. v. Advanced Measurement & Analysis Group, Inc.*, 515 F. Supp. 2d 565, 574 (W.D. Pa. 2007)(suggesting that false and disparaging claims about plaintiff were only actionable if made to private entities, not government or regulatory bodies).

For all the above reasons, therefore, Plaintiffs' boilerplate antitrust and monopolization allegations are precluded by the Noerr-Pennington Doctrine. Accordingly, this Court should dismiss Counts I-III of Plaintiffs' Amended Complaint with prejudice.

**D. This Court must dismiss the Section 1983 claim and state law claims because they are also precluded by the Noerr-Pennington Doctrine.**

The Noerr-Pennington Doctrine is applicable in contexts other than antitrust suits; therefore, it precludes liability under Section 1983 (Count IV) and the alleged state law claims for interference with a prospective contractual and economic opportunity (Count V), civil conspiracy (Count VI), and injunctive relief (Count VII). Courts of appeals, including the Third Circuit Court of Appeals, have frequently held that the restrictions on liability are applicable to liability under state tort laws and to liability under the Civil Rights Act. *See Herr v. Pequea Twp.*, 274 F.3d 109, 117 (3d Cir. 2001) (extending Noerr-Pennington immunity to Section 1983 claims), *abrogated on other grounds by United Artists Theatre Circuit v. Twp. of Warrington*, 316 F.2d 392 (3d Cir. 2003); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999)(extending Noerr-Pennington immunity to common law tort claims of malicious prosecution, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition); *State of Missouri v. National Organization of Women,* 620 F.2d 1301, 1318-19 (8th Cir.1980); *Video Intern. Production, Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir.1988) ("[W]e hold that any behavior by a private party that is protected from anti-trust liability by the Noerr Pennington doctrine is also outside the scope of Section 1983 liability"); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 614-15 (8th Cir.1980) (same); *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1342-46 (7th Cir.1977). Therefore, given the vast applicability of the Noerr-Pennington Doctrine, Plaintiffs' state law claims and their claim per Section 1983 must be dismissed for failure to state a claim.

**E. <u>Count VII (Injunctive Relief and Declaratory Judgment) must be dismissed because Plaintiffs lack standing to enjoin a contract where Plaintiffs are not taxpayers in the contracting jurisdictions.</u>**

In addition to the aforesaid reasons, Plaintiffs' claim for injunctive relief and declaratory judgment (Count VII) fail because Plaintiffs lack standing to bring these causes of action under Pennsylvania law. *See Rosado v. Ford Motor Co.*, 337 F.3d 291, 293-94 (2003) (applying Pennsylvania law regarding standing in federal diversity matter). In Pennsylvania, a taxpayer of a contracting jurisdiction who is also a disappointed bidder has standing to enjoin the award of a public contract. *American Totalisator Company v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980). However, the action is that of the taxpayer, not of the disappointed bidder. *Lutz Appellate Printers v. Department of Property and Supplies,* 472 Pa. 28, 33, 370 A.2d 1210, 1212 (1977). A disappointed bidder who is not a taxpayer in the contracting jurisdiction does not have standing to challenge the award of a public contract. *Mascaro and Sons, Inc. v. Township of Bristol,* 505 A.2d 1071, 1073 n. 3 (Pa. Commw. 1976); *See also General Crushed Stone Company v. Caernarvon Township,* 605 A.2d 472 (Pa. Commw. 1992); *C.O. Falter Const. Corp. v. Towanda Mun. Authority*, 614 A.2d 328, 332 (Pa. Commw. 1992) (holding that a mere disappointed bidder who is a federal or state taxpayer, is not an aggrieved taxpayer in the municipality benefitting from the contract and does not have a substantial, direct or immediate interest in the contract which is even equal to let alone greater than municipal taxpayers).

Here, Plaintiffs are citizens of the State of New Jersey and maintain principal places of business in that state. FAC ¶¶ 1, 2. While Plaintiffs may be authorized to conduct business in the Commonwealth of Pennsylvania, they do not allege that they are taxpayers in any of the Defendant municipalities. FAC ¶¶1, 2. Therefore, given the aforesaid law, Plaintiffs lack

standing to request any type of injunctive relief. FAC 228-234. Similarly, Plaintiffs cannot challenge the use of the proceeds of the Pennsylvania Liquid Fuels tax because they are not taxpayers in Pennsylvania. FAC ¶ 230; *See General Crushed Stone Company*, 605 A.2d at 473-74. Standing may only be granted to **taxpayers** who are best suited to challenge a governmental action which would otherwise go unchallenged. *C.O. Falter Const. Corp.*, 614 A.2d at 332 (emphasis added).

## V. CONCLUSION

Based on the aforesaid, it is evident that AMS' motion should be granted in its entirety and the Court should dismiss the Amended Complaint. The lack of an appropriate relevant market justifies dismissal of the allegations regarding improper control of Grip Tight and HPCS. The Noerr-Pennington Doctrine provides absolute immunity against the alleged antitrust and monopolization activities of the municipal roadway market. This immunity extends to the Civil Rights claim and to the state law claims. Furthermore, Plaintiffs lack standing to seek injunctive and declaratory relief.

**NORRIS, McLAUGHLIN & MARCUS, P.A.**

Date: 7/9/12

By: */s/ Steven E. Hoffman, Esquire*

Steven E. Hoffman, Esquire
Attorney I.D. # 63911
Saleem M. Mawji, Esquire
Attorney I.D. No. #200125
1611 Pond Road, Suite 300
Allentown, PA 18104
Ph# 610-391-1800 Fax# 610-391-1805
*Attorneys for Asphalt Maintenance Solutions, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASPHALT PAVING SYSTEMS, INC. and DOSCH-KING CO., INC., Plaintiffs, | : | No. 12-2370 |
| v. | : | |
| ASPHALT MAINTENANCE SOLUTIONS, LLC; NORTH WHITEHALL TOWNSHIP; PLUMSTEAD TOWNSHIP; SOLEBURY TOWNSHIP; UPPER MACUNGIE TOWNSHIP; BOROUGH OF MACUNGIE; LOWER MACUNGIE TOWNSHIP and OLEY TOWNSHIP, Defendants. | : | JURY TRIAL DEMANDED |

**CERTIFICATE OF SERVICE**

I, Steven E. Hoffman, do hereby certify that on the 9th day of July, 2012, a true and correct copy of Defendant Asphalt Maintenance Solutions, LLC's Memorandum of Law in Support of Motion to Dismiss Plaintiffs' First Amended Complaint has been filed electronically and is available for viewing and downloading from the ECF system.

Served electronically upon:

***ATTORNEYS FOR PLAINTIFFS ASPHALT PAVING SYSTEMS, INC. AND DOSCH-KING CO., INC.***

- **COLIN G. BELL**
  coling@hankinsandman.com,kimp@hankinsandman.com,
  tinag@hankinsandman.com
- **JOHN F. PALLADINO**
  john@hankinsandman.com
- **RAYMOND J. WENT, JR.**
  rayw@hankinsandman.com

***ATTORNEYS FOR OLEY TOWNSHIP***

- **ANDREW J. BELLWOAR**
  ajbellwoar@sianalaw.com,rakochel@sianalaw.com
- **SUSAN L. DIGIACOMO**
  sdigiacomo@sianalaw.com

***ATTORNEYS FOR LOWER MACUNGIE TOWNSHIP***

- **PAUL G. LEES**
  pglees@mdwcg.com

***ATTORNEYS FOR PLUMSTEAD TOWNSHIP and SOLEBURY TOWNSHIP***

- **HARRY G. MAHONEY**
  hgmahoney@dmvnlaw.com,kanderson@dmvnlaw.com
- **MAY MON POST**
  mpost@dmvnlaw.com, sheppler@dmvnlaw.com

***ATTORNEYS FOR BOROUGH OF MACUNGIE***

- **H. PETER NELSON**
  pnelson@grimlaw.com,froopchand@grimlaw.com,amadle@grimlaw.com,parmst
  rong@grimlaw.com

***ATTORNEYS FOR NORTH WHITEHALL TOWNSHIP***

- **LISA A. YOUNG**
  younglaw@ptd.net

***ATTORNEYS FOR UPPER MACUNGIE TOWNSHIP***

- **ANITA B. WEINSTEIN**
  aweinstein@cozen.com, dmcwilliams@cozen.com
- **ANN T. FIELD**
  afield@cozen.com,bplefka@cozen.com
- **MARYTERESA SOLTIS**
  msoltis@cozen.com

NORRIS McLAUGHLIN & MARCUS, P.A.

By: */s/ Steven E. Hoffman*
Steven E. Hoffman, Esquire
Attorney I.D. No. 63911