IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASPHALT PAVING SYSTEMS, INC. AND DOSCH-KING CO., INC. | : | |
| Plaintiffs | : | No. 12-2370 |
| v. | : | |
| ASPHALT MAINTENANCE SOLUTIONS, LLC; NORTH WHITEHALL TOWNSHIP; PLUMSTEAD TOWNSHIP; SOLEBURY TOWNSHIP; UPPER MACUNGIE TOWNSHIP; BOROUGH OF MACUNGIE, LOWER MACUGIE TOWNSHIP; AND OLEY TOWNSHIP | : | |
| Defendants | : | |

**DEFENDANT, ASPHALT MAINTENANCE SOLUTIONS, LLC'S REPLY BRIEF**

## I. INTRODUCTION

Defendant, Asphalt Maintenance Solutions, LLC ("AMS" or "Defendant"), by and through its undersigned counsel, Norris McLaughlin & Marcus, P.A., hereby submits this Reply Brief. AMS primarily relies upon its principal brief, which was previously filed. However, several of the arguments put forth by Asphalt Paving Systems, Inc. ("APS") and DOSCH-KING Co., Inc. ("DKC") (collectively referred to as "Plaintiffs") warrant further discussion.

## II. ARGUMENT

Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss First Amended Complaint ("Plaintiffs' Brief") expresses distaste with legal precedent and authority. Regardless, however, of how distasteful the Plaintiffs may find the United States Constitution, AMS has a constitutional right to petition the government.

Plaintiffs' Brief also continues to fail to define the relevant market in support of their claim for exclusive dealing in Grip Tight and High Performance Chip Seal ("HPSC"). Their explanation for this failure falls short for the following reasons. First, Plaintiffs' almost exclusive reliance upon *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992), is misplaced because that case is factually distinguishable. Second, reference to *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447 (1986) and *Toys "R" Us, Inc. v. FTC's*, 221 F.3d 928 (7th Cir. 2000), "actual anticompetitive effect" test is inapplicable to the present dispute. These two points are addressed in "Section A" below.

In addition, despite Plaintiffs' protests, the Noerr-Pennington Doctrine does immunize AMS from antitrust, Section 1983, and state law claims. AMS cannot be held liable for government action. Lastly, Plaintiffs lack standing to seek injunctive relief and a declaratory judgment because they are not Pennsylvania taxpayers.

**A. <u>Plaintiffs have failed to adequately define a relevant market</u>.**

Plaintiffs' assertion that this matter is "squarely on point with *Kodak*" is unsustainable. Plaintiffs' Brief at 10. In *Kodak*, the Supreme Court observed that a market is defined with reference to reasonable interchangeability. *Kodak*, 504 U.S at 482. The Court stated that in some cases, albeit limited cases, one brand of a product can constitute a separate market. *Id.* "But that possibility is limited to situations in which consumers are 'locked in' to a specific brand by the nature of the product." *PSKS, Inc. v. Leegin Creative Leather Products, Inc.*, 615 F.3d 412, 418 (5th Cir. 2010). For example, in *Kodak*, the Court found that the repair parts and services for Kodak photo-copiers was a relevant market because these parts and services were not interchangeable with parts

and services for other copiers, *i.e.* they were unique. *Kodak*, 504 U.S at 482. No other parts could be used to repair Kodak photo-copiers because of the nature of the products themselves.

But here, as was the case in *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437-43 (3d Cir. 1997), the products at issue, Grip Tight and HPSC, are admittedly **not** unique. Plaintiffs' Brief at 10; FAC ¶¶ 34, 47. Grip Tight and HPSC are interchangeable with other roadway maintenance products. *Id.* Therefore, Plaintiffs cannot define the product market by alleging that AMS has a monopoly over HPSC and Grip Tight. *See PSKS, Inc.*, 615 F.3d at 418 (rejecting the claim that Brighton goods could constitute their own product market).

Plaintiffs also highlight the fact that they have demonstrated the alleged anticompetitive effects of AMS's actions, and, therefore, the establishment of a relevant market is superfluous. Plaintiffs' Brief at 16. The two cases cited in support of this proposition, however, are simply not on point. In both *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 937 (7th Cir. 2000), and *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 461 (1986), there had already been an administrative investigation by the Federal Trade Commission and the evidence supported a finding that there had been "actual, sustained adverse effects on competition." *Indiana Fed'n*, 476 U.S. at 461; *Toys "R" Us*, 221 F.3d at 937. In addition, both cases involved horizontal agreements between competitors to restrain trade, not exclusive distributor agreements involving vertical relationships (like in this case). *Toys "R" Us*, 221 F.3d at 940. In fact, these cases do not dismiss the need for a market definition, but rather, "stand for the proposition that if a plaintiff can show the rough contours of a relevant market, and show that defendant commands a substantial

share of the market, then direct evidence of anticompetitive effects can establish the defendant's market power…." *Republic Tobacco Co. v. North Atlantic Trading Co.*, 381 F.3d 717, 736-37 (7th Cir. 2004) (explaining the court's earlier decision in *Toys "R" Us*); *see also FTC v. Libbey, Inc.*, 211 F.Supp.2d 34, 48-49 (D.D.C. 2002). Furthermore and significantly, in both cases, unlike here, there was no dispute as to the product market. *Indiana Fed'n*, 476 U.S. at 461; *Toys "R" Us*, 221 F.3d at 937.

Based upon the above, it is evident that reliance upon Plaintiffs' cited cases is inappropriate, as each one is distinguishable from the present facts. For all the aforesaid reasons, this Court should dismiss Plaintiffs' First Amended Complaint ("FAC").

**B. <u>The Noerr-Pennington Doctrine does immunize AMS from the consequences of government action</u>.**

As a last ditch effort to salvage their claims, Plaintiffs' suggest that this antitrust claim turns on the Defendant municipalities' misapplication of the Pennsylvania Liquid Fuels tax. 67 Pa. Code § 449.3(f). However, none of the cases cited by Plaintiffs support the proposition that a citizen can be held accountable for government action. Plaintiffs' Brief 12-14. In fact, as repeatedly explained in Defendant's Brief in Support of the Motion to Dismiss, petitioners, such as AMS, are not responsible for government action. If the Defendant municipalities exceeded their authority, only they can be held responsible for the result of their actions, not AMS. "Thus, if the conduct constitutes valid petitioning, the petitioner is immune from antitrust liability whether or not the injuries stem from the actual act of petitioning ***or*** from the government action resulting from the petitioning." *Mariana v. Fisher*, 338 F.3d 189, 198 (3d Cir. 2003) (internal citation omitted) (emphasis added). Indeed, Plaintiffs have conceded this point.

Plaintiffs' Brief at 12. Therefore, Plaintiffs' attempt at side-stepping the Noerr-Pennington Doctrine fails.

For example, in *Chambers Development Co., Inc. v. Municipality of Monroeville,* 617 F. Supp. 820, 822-23 (W.D. Pa. 1985), the court found the fact that a municipality's actions which were later found to be preempted or ineffective did not give rise to antitrust liability and allegations that a competitor submitted false information with its bid could not create antitrust liability. In *Chambers*, the plaintiff, who was engaged in garbage collection and disposal, brought an antitrust claim, among others, against the municipality of Monroeville, its officials, and one of its competitors. *Id.* at 821. Among plaintiff's claims, was the allegation that the municipality exceeded its authority by creating a 'sham bidding procedure which resulted in a group boycott.' *Id.* at 822. However, the court found that "the Municipality's activities were all directed toward the provision or regulation of authorized services. The fact that the regulatory activities taken were later found to be preempted or ineffective does not…subject the Municipality to antitrust liability." *Id.* Therefore, neither the municipality nor plaintiff's competitor, who allegedly submitted false and fraudulent bid information in furtherance of the conspiracy, could be found liable for antitrust violations. *Id.* at 823. Accordingly Plaintiffs' argument that AMS should be held responsible for the Defendant municipalities' alleged "*ultra vires*" acts is meritless.

### C. **<u>Plaintiffs' lack of standing is evident</u>.**

This action is a disappointed bidder case – nothing more. *See* FAC ¶ 34. Nonetheless, and in any event, Plaintiffs cannot challenge the use of the proceeds of the Pennsylvania Liquid Fuels tax because they are not Pennsylvania taxpayers. *See The*

*General Crushed Stone Company v. Caernarvon Township*, 605 A.2d 472, 473-74 (Pa. Commw. 1992). Moreover, Plaintiffs have a political remedy to their quandary – petition the Defendant municipalities to change roadway maintenance bid specifications. Accordingly, Plaintiffs' reliance on the court's narrow exception to the taxpayer standing requirement in *Philips Bros. Electrical Contractors, Inc. v. Valley Forge Sewer Auth.*, 999 A.2d 652 (Pa. Commw. 2010), which only addressed the violation of the Pennsylvania Separations Act, is inappropriate.

## III. CONCLUSION

Based on the aforesaid, it is apparent that Plaintiffs' analysis is flawed and their arguments are of no avail. The failure to define a relevant market and the protection afforded by the Noerr-Pennington Doctrine are fatal to Plaintiffs' claims. For all the foregoing reasons, as well those set forth in AMS's principal brief, AMS respectfully requests that the Court dismiss the First Amended Complaint.

**Respectfully Submitted,**

**NORRIS, McLAUGHLIN & MARCUS, P.A.**

Date: 08/24/12

By: */s/ Steven E. Hoffman, Esquire*

Steven E. Hoffman, Esquire
Attorney I.D. #63911
Saleem M. Mawji, Esquire
Attorney I.D. #200125
1611 Pond Road, Suite 300
Allentown, PA 18104
*Attorneys for Asphalt Maintenance Solutions, LLC*